## THE FIRST NATIONAL BANK OF PARSONS V. J. Q. A. WENTWORTH.

1. MISTAKE, *Power of Court to Correct.* A court of equity has power to correct a mistake in a written instrument so as to make it express the intention and agreement of the parties, and when the fact of a mistake appears and the rights of no third party intervene, it is the duty of the court to make the correction; and this duty is coëxtensive with the mistake, and extends, not merely to the reformation of the original instrument, but also to all subsequent proceedings, papers, judgments and decrees into which the mistake, as a mistake, is carried.

2. CORRECTION OF MISTAKE, *Insufficient Defense Against.* Where a mortgage is given to secure a loan, which mortgage misdescribes the property intended to be mortgaged, and four years thereafter the mortgage is foreclosed and the same misdescription is carried into the foreclosure, *held,* that neither the lapse of time, nor the fact that a decree had been entered, is a defense to an action brought for the purpose of correcting the description in the mortgage, the pleadings and the decree.

3. REFORMATION OF MORTGAGE, *When not Prevented.* Where a mortgage is given which contains a misdescription of the land, and thereafter the mortgagor gives a second mortgage to a third party, simply to secure a past-due and antecedent debt, *held,* that such second mortgagee, having parted with nothing to obtain his mortgage, occupies no higher position than that of a voluntary grantee, and has no such rights or interest in the property as will prevent a reformation of the mortgage.

4. —————— The mere correction of a misdescription of property in a decree rests upon very different considerations from those involved in a motion to set aside the decree. The one implies the existence of a matter to which the attention of the court was not called; the other challenges the action of the court upon a matter distinctly presented, and either expressly adjudicated or requiring adjudication.

5. TRIAL DOCKET; *Practice.* Under ¿ 313 of the code, it is the duty of the clerk to make out a trial docket, at least twelve days before the commencement of the term, assigning the cases to particular days; and where the docket has been so prepared and a case standing for trial upon an issue of law is set for hearing upon a day prior to the days to which cases standing for trial upon issues of fact are assigned, and no objection to such assignment is made by either party, *held*, that the court may legally call the case for trial upon the day to which it is assigned, and dispose of it in the absence of one of the parties.

6. PRACTICE; *Discretion of Court.* Where a case standing upon demurrer to a petition is properly called for hearing in the absence of the defendant, the demurrer overruled, and judgment entered in favor of the plaintiff, whether that judgment shall be vacated and the defendant permitted to answer and have a trial is a matter resting in the sound discretion of the trial court, and an overruling of an application of the defendant therefor will not be reversed in this court unless by reason of a clear showing of both diligence and merit it is apparent that the trial court abused its discretion.

7. —————— Parties who rely upon the clerk of the court to send word to them as to the days upon which their cases are set for trial, do so at their peril, for it is not one of the duties cast upon him to send such notice to litigants.

*Error from Neosho District Court.*

ACTION brought by *Wentworth* against *Phelps* and others, to correct a mistake in a certain mortgage on real estate, and accordingly to 'reform the proceedings in the foreclosure thereof. Trial at the July Term, 1881, of the district court, and judgment for plaintiff. One of the defendants, the *First National Bank of Parsons,* brings the case here. The facts are sufficiently stated in the opinion.

*C. H. Kimball,* for plaintiff in error.

*Hutchings & Denison,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: The facts of this case are as follows: In August, 1875, R. A. Phelps was the owner of one hundred

and twenty-two and forty-five hundredths acres of land in the southwest quarter of section 22, township 28, range 20, in Neosho county, Kansas.  This tract was of irregular shape, and described in the deeds of conveyance to said Phelps partially by metes and bounds.  In that month Phelps borrowed of the Rollingsford Savings bank. $1,100, to be secured by a mortgage on said tract; the mortgage was prepared, executed and delivered, but by a mistake of the scrivener who drew the mortgage the following portion of said tract was omitted, to wit:

"Beginning at the southwest corner of the northeast quarter; thence north ten and eighty-five one-hundredths chains; thence east six and fifteen one-hundredths chains; thence south ten and seventy-five one-hundredths chains; thence west six and fifteen one-hundredths chains, to the place of beginning; containing six and sixty-seven one-hundredths acres."

The mortgage, however, recited that it conveyed 122.45 acres, which was in fact all that Phelps owned in said quarter-section, and to make which amount required the tract of 6.67 acres, whose specific description was omitted.  The 122.45 acres constituted a single farm, and the land was so situated that the line dividing the 6.67 acres from the balance of the farm ran through and divided the dwelling-house and orchard, leaving part of each on each side of the line.  The note and mortgage were subsequently indorsed to the plaintiff.  On the 6th day of August, 1877, said Phelps executed to the First National bank of Parsons a mortgage to secure a past-due and precedent debt, which mortgage included said tract of 122.45 acres, and also several other parcels of land.  On the 24th day of October, 1879, the bank commenced an action to foreclose its second mortgage, in which action the present plaintiff was made defendant, who appeared and set up his mortgage.  A decree of foreclosure was thereafter entered, in which plaintiff's mortgage was adjudged a prior lien; but by mistake the same omission in description was carried into the decree, and the 6.67-acre tract was left out from that portion of the lands upon which plaintiff's mortgage was adjudged

the first lien. Upon this decree an order of sale was issued and placed in the hands of the sheriff to execute, and while so in his hands for the purpose of execution, the mistake in the mortgage decree and order of sale was discovered, and the plaintiff brought this action to reform all papers and proceedings, including the mortgage decree and writ, so as to make them include specifically the 6.67-acre tract. This petition was filed in the office of the clerk of the district court of Neosho county, on the 6th day of November, 1880. On the 23d day of December, 1880, the bank filed a general demurrer. On the 8th day of April, 1881, at the regular term of said court, the bank filed its petition, affidavit and bond for a removal of the case to the U. S. circuit court, and the removal was ordered. At the June term of the circuit court, the bank having failed to file a transcript by the first day of the term, the case was by order of the circuit court remanded to the district court of Neosho county. The July term of the district court commenced on the 12th day of July, and in preparing the docket for that term this case was set down for trial by the clerk on the docket for the first day. When the case was called on the first call of the docket on that day, the defendant did not appear, and the case was passed. In the afternoon of the same day the case was called a second time, and peremptorily. The defendant still failing to appear, the case was submitted by the plaintiff upon the petition and demurrer. The demurrer was overruled, and judgment entered in behalf of the plaintiff, decreeing the reformation as prayed for. On the morning of the 13th, the second day of the term, the defendant, National bank, appeared by its attorney and moved to set aside the judgment and open the case for answer and trial. Affidavits were filed on both sides, upon the hearing of which the district court overruled the motion; and now the bank brings the case here for review.

Obviously two questions are presented: *First*, Was the demurrer properly overruled? *Second*, Upon the showing made, did the district court err in refusing to set aside the judgment and open the case for answer and trial?

Upon the first question we have little doubt.  It is one of the unquestioned powers of a court of equity to correct mistakes; it reforms instruments whenever it satisfactorily appears that by mutual mistake such instruments do not express the agreements of the parties; and this power is not limited to the mere reformation of instruments executed by the parties.  It extends to judgments, decrees, and in fact almost every, if not every, paper or document by which the rights of parties are affected.  In this case the intent of the parties, the fact of the mistake, and the manner in which it originated, were distinctly stated.  Not only that—the fact of the mistake is rendered more clear by the statement in the mortgage of the number of acres conveyed, by the relation of the tract omitted to the balance of the farm, and the situation of the building and orchard.  Counsel for the bank argues against this, claiming, first, that the plaintiff is not only seeking to reform a mortgage, but to overturn a judgment and gain for himself that which by such judgment was given to another party.  He claims that a judgment cannot lightly be disturbed, and that after a party has had his day in court he must abide by the judgment rendered, except for extraordinary reasons and upon the fullest showing.  In support of this, he cites Freeman on Judgments, and other authorities.  But a distinction must be recognized between the mere correction of a mistake and the setting aside of a judgment.  Where it appears that a distinct question has been presented to the consideration of a court, its ruling had thereon, and that ruling passed into judgment, it is one thing for a party to apply thereafter to have that judgment set aside, and a different ruling made by the court upon that question; but it is an entirely different thing when a party avers that by some mistake the judgment which was entered does not in fact express the intention of the court in respect to its adjudication of the rights of the parties, or that by mistake a matter has been by the language of the decree apparently adjudicated by the court, to which its attention was not called, and upon which it did not intend to make any ruling.  Take

this very case: if the answer in the foreclosure action filed by the plaintiff had set up the fact of a mistake, and asked an adjudication of plaintiff's rights based upon such a mistake, and the court upon such an answer had made the decree which it did, then an application at this time to correct the decree would require something more than the mere showing that there was a mistake in the mortgage, but would require a further showing of some equitable reasons why the decree of the court once rendered against the claim of a mistake should now be disturbed.   We all know that the most careful men make mistakes; that oftentimes those mistakes are not discovered for years.   In such case, if application is made immediately upon discovery of the mistake, and it is shown that it was simply a mistake, and no rights of third parties are prejudiced, then it is the duty of courts to intervene and correct the mistake.   And it matters not through how many papers or in how many proceedings the mistake has been carried and appears.   See upon this, *Blodgett v. Hobart*, 18 Vt. 414; *Davenport v. Scoville*, 6 Ohio St. 459; *Cummings v. Freer*, 26 Mich. 128; *Quivey v. Baker*, 37 Cal. 465; 1 Jones on Mortgages, § 98; 2 id., § 1464.

Again, counsel for the bank contends that whatever might be right if the proceedings were against the mortgagor alone, it ought not to be sustained against the bank, because in ignorance of any mistake it has acquired rights upon this property by virtue of its mortgage.   It is doubtless a general proposition, that where rights of third parties have intervened a mistake cannot be corrected to their prejudice. But that proposition cannot avail the bank in this case, because, as alleged, the bank parted with nothing.   It simply took its mortgage as security for a debt already due.   Whether its mortgage was good or bad, covered much or little, this was not a mortgage for which it parted with anything.   It would be in no worse condition if its entire mortgage was adjudged void than it was before it took it.   It stands, therefore, in no better position than it would if a voluntary grantee from the mortgagor.   Having parted with nothing,

it cannot say that it has lost anything, or that its rights are prejudiced if the plaintiff's mortgage is made to conform to the actual agreement. Further than that, the petition alleges that the bank took its mortgage with the full knowledge of the plaintiff's mortgage, and expressly agreeing to take its mortgage as a second and subsequent mortgage and subject and in subordination to the previous mortgage given to plaintiff.

We conclude, therefore, that the demurrer to the petition was properly overruled.

The other question is one of more doubt. Counsel contends that the case was improperly set down on the docket for the first day of the term. The statute provides (Code, § 313,) that "actions shall be set for particular days in the order hereinafter stated, and so arranged that the cases set for each day shall be tried as nearly as may be on that day, namely: First, issues of fact to be tried by a jury; second, issues of fact to be tried by the court; third, issues of law." It appears that the clerk in making out the docket for that term set all the cases for three days. On the first day were placed something over thirty cases standing on default—this case, and a case to be submitted on an agreed statement of facts. On the two subsequent days were placed cases for trial on issues of fact and issues of law. Counsel construes this section of the statute to require that all cases standing upon issues of fact to be tried by a jury must be placed first upon the docket, and that cases standing on issues of law must be placed last on the docket, and that no case standing upon issues of law can be properly called for hearing until after all the cases standing upon issues of fact have been called. We do not so understand the scope of the statute. We are inclined to agree with the views expressed by the district court, that the order of arrangement prescribed is for the setting of each day rather than for the docket as a whole. But be that as it may, a mistake of the clerk in arranging the docket does not vitiate the setting of a case upon any particular day, or render illegal a trial upon the day to which

it is assigned.  Evidently some discretion is given to the clerk in the arrangement of the docket.  He is not called upon to set all the docket in its exact numerical order, but he is authorized to break up that order and distribute the cases to different days.  This docket must be made out at least twelve days before the term, and when the docket has been so made out, if the case is triable at that term, it is triable on the day to which it is assigned, even though in the assignment the clerk has placed a case standing upon issues of law in advance of one standing upon an issue of fact.  If any mistake has been made by the clerk in the order of assignment, it may be corrected upon application by the court ; but if no application is made to correct the assignment, and the docket is called in the order in which the cases are assigned, the trial of any case in such order must be held good.  The purpose of preparing the docket twelve days before the term is to give parties notice of the days upon which their cases are placed.  They are bound to take notice of such assignment, and if they do not challenge its correctness until after the trial the objection is too late.  Therefore the claim that the case was improperly tried on the first day of the term cannot be sustained.

Further, was there such a showing of diligence and merit as rendered the refusal of the court to open judgment and permit answer and trial erroneous?  Upon this the facts are, that it had been the custom of the present clerk, as well as of his predecessor, in preparing the docket to set down only default cases and uncontested motions for hearing on the first day of the term, and that inadvertently in preparing this docket he had included in the first day's assignment, with the default cases, this case and the one on the agreed statement; that he had frequently before the commencement of a term sent to non-resident attorneys papers containing the docket as prepared, but failed to do it in this case; that on Sunday morning, July 10th, the defendant's attorney wrote to the clerk inquiring upon what day the case was set; that he resided at Parsons, a place only twenty miles distant from the county

seat of Neosho county; that between the two places a daily mail passed; that the letter reached the clerk about 6 o'clock on the evening of the 11th, and was immediately answered, the answer reaching the attorney about 4 o'clock on the evening of the 12th, and after the case had been tried and disposed of; that upon receiving this reply the attorney at once repaired to the county seat, and was present at the opening of the court on the morning of the 13th, and immediately thereafter presented his application for the opening of the judgment. On the other hand, it appears that the demurrer was filed in December; that at the first ensuing term in April the bank took steps to remove the case to the federal court, which of course carried the case over the April term; that after having secured an order of removal, and thus a postponement of any hearing, the bank failed to file a transcript in the federal court before the next ensuing term. This of course worked a further postponement, and a remanding of the case to the district court; though it may be remarked here, that the reason given for not filing the transcript in the federal court was, that the transcript, though delivered to the bank, was retained by some one of its employés, and did not go into the hands of the attorney until after the opening of the federal court. Further, the docket was duly prepared twelve days before the commencement of the July term, was published in all the six newspapers of the county, and though the bank was situated and its attorney lived in Parsons, only twenty miles away from the county seat of Neosho county, no effort was made to ascertain the day upon which the case was set for trial until Sunday, the second day before the commencement of the term, and then only in the manner heretofore mentioned.

Upon the merits, the affidavit of the attorney not disputing the fact that the mortgage to the bank was given to secure an antecedent debt, alleged that there were guarantors on that indebtedness; that in consideration of the mortgage, without the consent of the guarantors, the bank extended the time of payment, and thereby released them from all liability; that the mortgagor, Phelps, had become insolvent, and that rely-

ing upon the security afforded by this 6.67 acres, the bank had suffered other portions of the real estate mortgaged to be sold at less than their real value, and that now, without this tract, the security would be insufficient for the balance of its claim; that also, relying upon this security, it had refused at one time an offer from Phelps to convey several hundred acres of land in satisfaction of this debt, and that since such refusal said land had been sold or incumbered. On the other hand, it is said that the bank could not have been misled as to the extent of the plaintiff's lien, because the mortgage expressly declared that it covered 122.45 acres, which, including this 6.67 acres, was all that the mortgagor then owned in that quarter-section. Further, the record of the foreclosure suit showed that there was but one guarantor, Joel Barnhardt; that he filed an answer alleging an extension by the bank and a consequent discharge of himself, to which answer the bank filed a reply containing a general denial, and the decree found against this defense, and continued the case as to the guarantor. The language of the decree is as follows:

"And it is further considered and adjudged that the answer interposed by the defendant Barnhardt does not state facts constituting any defense to plaintiff's cause of action; but the plaintiff, and if said defendant consenting, it is ordered that the said defendant Barnhardt shall within thirty days from the entry hereof, pay the costs of issuing the summons, and of serving same on said defendant Barnhardt, and in addition thereto, all costs made by said defendant, that thereupon said action shall be dismissed as to said defendant; but if he shall fail to make such payment, the action shall stand continued, and the plaintiff be entitled to judgment against said defendant at the next term of the court as on default."

These, briefly stated, are all the facts bearing upon the questions of diligence and merit. Ought the court to have set aside the judgment and permitted an answer and trial? We have considerable hesitation about this question. If the court had sustained the motion, we do not think it could have been held erroneous. There was such a showing as, appealing to the discretion of the trial court, would have justified the

granting of the motion; and yet on the other hand, we are constrained to hold that it does not appear that there was such an abuse of discretion as compels us to reverse the ruling. It cannot be said that there was a clear showing of diligence. On the contrary, the facts indicate dilatoriness and negligence. The bank was clearly not watchful and active in consummating the removal of the case to the federal court. Nearly two months intervened between the order of removal and the commencement of the term of the federal court. The bank and its attorney were within twenty miles of the office of the clerk of the district court. A very little effort and care on its part would have enabled it to have perfected the removal by the filing of the transcript with the clerk of the federal court. This it did not do, and after putting the counsel for the plaintiff to the trouble of coming to Leavenworth to attend a session of the federal court, and finding no case there, of himself obtained a transcript and an order remanding the case, it ought to have been careful to watch the case in the district court. It knew when the term of the district court commenced. It knew that the docket was to be made out at least twelve days before the term. It knew that the clerk might place all the cases on a single day, and would be apt to do so if the docket was small; and yet, being within twenty miles of the clerk's office, it made no effort to ascertain its place on the docket until the Sunday before the Tuesday on which the term commenced. If it relied on any habit or understanding with the clerk, it did so at its peril. (*M. K. & T. Rly. Co. v. Crowe*, 9 Kas. 500.) See also upon a question somewhat similar the cases of *Masters v. McHolland*, 12 Kas. 25; *Mehnert v. Thieme*, 15 Kas. 370; *Green v. Bulkley*, 23 Kas. 130.

Again, as to the merits, the description in the plaintiff's mortgage, while it did not specifically include this tract of 6.67 acres, was clearly such as to intimate to any person making inquiry what the mortgage was in fact intended to cover. The bank's mortgage was simply to secure an antecedent debt, and the guarantor upon that debt was not in fact discharged

13—28 KAS.

by any extension; and while the bank may have permitted property upon which it held a mortgage to be sold at less than its real value, this, at least, does not present very strong grounds for equitable relief.

Upon the whole case, therefore, our conclusion is that there is not such a showing of an abuse by the trial court of its discretion as justifies us in reversing its ruling. (*Spratley v. Insurance Co.*, 5 Kas. 155.)

The judgment will therefore be affirmed.

All the Justices concurring.