No. 27,814.

ALBERT M. CASTEN, *Appellee,* v. R. T. KREIPE (CHARLES W. JOHN-
SON substituted), as Receiver, etc., and C. J. PETERSON (ROY L.
BONE substituted), as Bank Commissioner, etc., *Appellants.*

(264 Pac. 55.)

SYLLABUS BY THE COURT.

BANKS AND BANKING — *Depositors' Guaranty Fund — Deposits Guaranteed —
Certificates of Deposit Subject to Reformation.* A depositor made a time
deposit in a bank operating under the guaranty law and now insolvent, on
terms which complied with the order of the bank commissioner relating to
rate of interest permissible on guaranteed deposits. Through mutual mis-
take of the parties, the certificate issued to the depositor was framed in
such terms it violated the order, and disclosed a deposit not within the pro-
tection of the bank guaranty fund. *Held,* the certificate was subject to
reformation to make it express the true terms of the deposit, and when so
reformed the depositor was entitled to a certificate on the guaranty fund.

Appeal from Osage district court; CAREY E. CARROLL, judge. Opinion filed
February 11, 1928. Affirmed.

*William A. Smith,* attorney-general, and *John G. Egan,* assistant attorney-
general, for the appellants.

*A. K. Stavely,* of Lyndon, and *F. M. Harris,* of Ottawa, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one against the receiver of the Farm-
ers State Bank of Quenemo, and the bank commissioner, to reform a
certificate of deposit issued to plaintiff by the bank, and to require
the bank commissioner to issue to plaintiff a certificate of participa-
tion in the bank guaranty fund. Plaintiff prevailed, and defendants
appeal.

The certificate bore the number 3,127, was dated March 16, 1921,
was for $5,500, and was payable to the order of Albert M. Casten.
In other respects the certificate was identical in terms with certifi-
cate 3,189 for $1,285.40, issued on May 31, 1921, by the same bank,
to Joel Barrett. The Barrett certificate was considered in the case
of *Barrett v. Bank Commissioner,* 114 Kan. 804, 223 Pac. 1091.
The court held the Barrett certificate was payable on demand, did
not conform to the order of the bank commissioner relating to rate
of interest demand certificates might bear, and consequently did not
entitle the holder to a certificate on the guaranty fund. It follows

Banks and Banking, 7 C. J. pp. 485 n. 82, 647 n. 39. Reformation of Instru-
ments, 34 Cyc. p. 926 n. 56 new.

that the certificate issued to Casten was payable on demand, did not conform to the order of the bank commissioner relating to rate of interest, and would not entitle the holder to a certificate on the guaranty fund. This would not be true if the certificate were payable in not less than three months and not more than two years, and had a definite date of maturity when interest ceased.

Forget the guaranty fund for the present, and consider the case between Casten and the Farmers State Bank of Quenemo, represented by its receiver.

Casten made a deposit in the bank on certain stipulated terms, and received a certificate of deposit supposedly evidencing those terms. What was the nature of that instrument? By the overwhelming consensus of judicial opinion it was a promissory note (7 C. J. 647). A sufficient number of the cases cited in support of the Corpus Juris text, including the case of *Blood v. Northup and Chick,* 1 Kan. 28, have been examined, to test the text's accuracy. Being payable to order on demand, the certificate was a negotiable instrument, within the negotiable instruments law. (R. S. 52-201; *Kirkwood v. First Nat. Bank of Hastings,* 40 Neb. 484, 488, quoted in the opinion in the Barrett case; *Bank v. Dillenbeck,* 111 Kan. 98, syl. ¶ 1, 205 Pac. 1022; *Forrest v. Safety Banking & Trust Co.,* 174 Fed. 345, and authorities cited in the opinion.)

May a negotiable instrument which through mutual mistake omits or contains terms not according to the agreement of the parties, or which otherwise fails to evidence their intention, be reformed in equity?

"The jurisdiction to grant the relief of reformation may be exercised with respect to written instruments operating *inter vivos,* whether they are executed contracts, such as deeds of conveyance, mortgages, leases, or executory agreements, such as bonds, policies of insurance, notes, bills of exchange, and the like." (2 Pomeroy's Equity Jurisprudence, 4th ed., § 871, p. 1790.)

Some of the cases in which negotiable instruments have been reformed are: *Fuller v. Hawkins,* 60 Ark. 304; *Hathaway v. Brady,* 23 Cal. 121; *Loudermilk v. Loudermilk,* 98 Ga. 780; *Fisher v. Barnett,* 56 Ill. App. 649; *Lee & Jamieson v. Percival,* 85 Ia. 639; *Turpin v. Gresham et al.,* 106 Ia. 187; *Gump's Appeal,* 65 Pa. St. 476; *McClure v. Little,* 15 Utah, 379; *Stanton v. Caffee and Husband,* 58 Wis. 261; *Kropp v. Kropp and others,* 97 Wis. 137.

In the case of *American Nat'l Bank v. Marshall,* 122 Kan. 793, 253 Pac. 214, this court sanctioned reformation of a promissory note nonnegotiable in form, by inserting words of negotiability.

The nature of an action for reformation is such that it is outside the field of operation of the parol evidence rule. Apparently it has been necessary to say this in most cases in which decrees of reformation have been approved. It has now been said so often the courts should be relieved from encumbering the pages of the reports with citations of authority.

The district court found the deposit actually made was made and accepted as a deposit for the fixed period of six months, and bore interest at the rate of four per cent per annum for that period only; certificate No. 3,127 was prepared and delivered on receipt of the deposit, under the conditions stated; the officers of the bank and the plaintiff believed the certificate correctly evidenced the terms on which the deposit was made and accepted; and the certificate was erroneously written pursuant to the mutual mistake of the parties. The findings were based on ample evidence, one item of which was the bank's time-certificate register containing the record of certificate No. 3,127. The register disclosed the certificate was a time certificate for six months and bore interest at the rate of four per cent. The result is, as between plaintiff and the bank the judgment reforming the certificate to state the true terms of the actual deposit was warranted by the law and the evidence.

The contentions of the bank commissioner concerning the relation of reformation of the certificate to the guaranty fund may now be examined.

It is said that reformation would prejudice other banks which contributed to the guaranty fund. The parties entered into the following stipulation which disposes of that subject:

"During the time mentioned in the plaintiff's petition, the plaintiff had money deposited in the Farmers State Bank of Quenemo, Kansas, represented by certificates of deposit in said bank in the form set out in plaintiff's petition. That during all of said times such deposits were from time to time reported by the Farmers State Bank of Quenemo to the bank commissioner of the state of Kansas as a part of the average guaranteed deposits of said bank, and said bank paid to the bank guaranty fund assessments upon an amount reported by it as its average guaranteed deposits, which included the amount of the plaintiff's deposits."

It is said reformation would prejudice other depositors having claims on the vanishing guaranty fund. In support of this contention, the case of *Hollinger v. Imperial Warehouse Co.*, 122 Kan. 709, 253 Pac. 215, is cited, in which reformation of a mortgage, to the injury of a purchaser and a mortgagee for value without notice, was

not permitted; and the text of 23 R. C. L., section 33, pages 339 and 340, is quoted to the effect that reformation will not be permitted to the injury ·of innocent third persons, such as purchasers, lien holders, and others who have acquired intervening interests, without notice, actual or constructive. In this instance, what depositor, in what failed bank, stands in the shoes of a purchaser by deed, mortgage, or other mode of acquisition, for value and without notice, of an interest in the guaranty fund? What depositor in any failed bank made his deposit, and thereby acquired his interest in the guaranty fund, relying on the fact that the original certificate of deposit issued by the Quenemo bank to Albert M. Casten would not entitle Casten to participate in the guaranty fund if the bank failed? The pleading and proof show none, the court knows of none, and the particular authorities cited must wait for application until some case arises in which a depositor acquired his interest in the guaranty fund by some form of innocent purchase, or in which a depositor is qualified to defend his interest by invoking equitable estoppel. In this connection the opinion by Mr. Justice Brewer in the case of *National Bank v. Wentworth,* 28 Kan. 183, is instructive. In the Wentworth case there was a misdescription in a mortgage of a farm, resulting from an omission. The mortgagor gave a subsequent mortgage to the bank to secure an existing indebtedness, which correctly described the farm and included the tract omitted from the first mortgage. The bank commenced an action to foreclose its mortgage, and made the first mortgagee a party. The judgment of foreclosure declared the first mortgage to be a first lien, but perpetuated the mistake in description. An order of sale had been issued when the mistake was discovered. The first mortgagee then brought an action to reform not only the mortgage, but the foreclosure decree. The district court overruled a demurrer to the petition to reform, and in affirming the judgment of the district court, this court said:

"Again, counsel for the bank contends that whatever might be right if the proceedings were against the mortgagor alone, it ought not to be sustained against the bank, because in ignorance of any mistake it has acquired rights upon this property by virtue of its mortgage. It is doubtless a general proposition that where rights of third parties have intervened a mistake cannot be corrected to their prejudice. But that proposition cannot avail the bank in this case, because, as alleged, the bank parted with nothing. It simply took its mortgage as security for a debt already due. Whether its mortgage was good or bad, covered much or little, this was not a mortgage for which it

parted with anything. It would be in no worse condition if its entire mortgage was adjudged void than it was before it took it. It stands, therefore, in no better position than it would if a voluntary grantee from the mortgagor. Having parted with nothing, it cannot say that it has lost anything, or that its rights are prejudiced if the plaintiff's mortgage is made to conform to the actual agreement." (*National Bank v. Wentworth,* 28 Kan. 183, 188.)

The decision in the Wentworth case reveals the fallacy in the proposition on which the argument against reformation is predicated:

"To reform a certificate of deposit which is not entitled to payment under the guaranty fund so as to make it entitled to payment is a direct injury to the contributing banks and to the other depositors in insolvent banks, . . ."

No depositor in any failed bank has any interest in the guaranty fund which is "injured" by the allowance of any other depositor's lawful claim upon the fund. Individual distributive shares may be reduced in amount, but no depositor suffers any invasion of interest by reduction of the amount of his share through participation in the fund by any one else legally entitled to participate. Removal of an obstruction to lawful participation arising from innocent mistake injures nobody, and removal of such an obstruction is all that is sought to be accomplished by reformation of Casten's certificate.

In the brief for defendants much space is devoted to demonstrating the soundness and the importance of the order of the bank commissioner relating to rates of interest and transgression of the order by the certificate which Casten received, and it is said the only difference between this case and the Barrett case is that in this case reformation is sought. Casten does not question the sanctity of the bank commissioner's order. He freely admits the certificate he received was just as bad as the certificate issued to Barrett, and nothing more fatal to potency to create a claim on the guaranty fund could be said. What he desires to do is to make his certificate speak the truth. When made to speak the truth, it evidences a guaranteed deposit, and the fact that he does not rely on the bad certificate, but seeks to reform it before asking for a certificate on the guaranty fund, is precisely the fact that distinguishes this case from the Barrett case.

In the brief for the defendants it is said:

"Unless the face of the certificate of deposit should be the sole criterion in applying this four-per-cent rule, then there would practically be no criterion, and the rule would be useless. In such a case the bank and the depositor would have a license to make such arrangements as they pleased about the

actual repayment of the deposit and the interest thereon, and there could be no test or rule to apply to their conduct. It would, in effect, abrogate the order of the bank commissioner upon the subject. . . . It was not open to the bank and its depositors to do as they pleased about the contract of deposit and to make an oral agreement upon the subject different from that set out on the certificate of deposit."

A discussion of the facts of the case, with some recognition of the familiar law governing reformation of instruments, would be more persuasive. Casten and the bank exercised no license to do as they pleased about making a contract with respect to repayment of the deposit and interest different from that set out in the certificate. They made a contract which complied in all respects with the bank commissioner's order, and that was the only contract they did make. A mistake was made in writing up the certificate. It did not set out the contract. Under the law of reformation of instruments, the contract and not the false instrument is the controlling thing, and the evidence of the contract is made to do what it is designed to do, show what the contract was. Reformation of Casten's certificate bears no more relation to abrogation of the bank commissioner's order than it bears to abrogation of the law of usury or the statute of frauds. The certificate having been reformed, it is the criterion for applying the four-per-cent rule, the rule in fact observed in respect to Casten's deposit.

In the brief for defendants appears the following:

"There are five other suits pending, begun in the district court of Osage county, on the same theory adopted by the plaintiff in this case for a reformation of certificates of deposit issued by the Farmers State Bank of Quenemo and for the issuance to the plaintiffs of certificates against the guaranty fund. The total amount of principal claimed in such five other cases is nearly sixteen thousand dollars, besides a large amount of interest. And there are other holders of like certificates of deposit issued by. that bank who will bring suit for reformation and the issuance of certificates against the guaranty fund if the plaintiff should prevail in this case. The total amounts represented by such claims on account of similar certificates issued by the Farmers State Bank of Quenemo is over $50,000 of the principal of the certificates of deposit, besides which the interest is a large amount. There are, no doubt, many holders of such certificates in other insolvent banks who would bring suit on the same theory if there were any hope of success. The result would be to deprive depositors who have complied .with the statute and the orders of the commissioner of their rights against the guaranty fund in favor of depositors who have not complied with the statute and the orders of the commissioner."

As indicated above, the assertion made in the concluding sentence of this paragraph is not true. As Commissioner Hunt pointed

out in one of his conclusions of law in the case of *National Bank v. Bank Commissioner,* 110 Kan. 380, 204 Pac. 715:

"The bank-guaranty law guarantees certain deposits, but not evidences thereof, whether they take the form of certificates, promissory notes, or receipts." (p. 389.)

Casten made a deposit which complied with the law and with the order of the bank commissioner, and which entitled him on failure of the bank to participate in the guaranty fund. The mistake in the certificate issued to him was without fault, and was without consequence in fact so far as conduct of the bank, the banking department, and persons interested in the guaranty fund, were concerned. With the mistake corrected, Casten holds a valid certificate which correctly evidences his deposit, and which entitles him to a certificate on the guaranty fund. It converts the language of the law into jargon to say that enforcement of his right to participate in the guaranty fund deprives other participants of their rights, and it is a matter of no concern to this court or to the bank commissioner how large or how small the number may be of persons who have lawful right to participate in the guaranty fund.

In the brief for defendants complaint is made because in the suit for reformation a mandatory order directing issuance of a certificate on the guaranty fund was prayed for and granted. It is contended that after reformation a separate mandamus action should have been prosecuted. From a practical business standpoint, making one lawsuit serve the purpose of two, shortening the time in which litigation may be finally ended, and saving unnecessary costs and expenses which must come out of funds which ought to go to depositors, are matters which seem sensible. The bank commissioner will likely regard them favorably; and this court will assume responsibility for whatever disaster may result to the science of procedure.

The judgment of the district court is affirmed.