No. 29,809.

SAMUEL HASTON, *Appellant*, v. THE CITIZENS STATE BANK OF STERLING, *Appellee*.

(297 Pac. 1061.)

Opinion filed April 11, 1931.

*C. M. Williams, D. C. Martindell* and *W. D. P. Carey,* all of Hutchinson, for the appellant.

*A. C. Malloy, Roy C. Davis, Warren H. White* and *E. T. Foote,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action brought by Samuel Haston against the Citizens State Bank of Sterling, to specifically enforce a contract for the sale and conveyance of several tracts of land, and to accept as full compensation therefor the sum of $13,155.82, and also for damages against the defendant for $7,000. The trial court found that the minds of the contracting parties did not meet in parts of the contract as evidenced by a bond for a deed and other instruments constituting the contract, and refused specific performance, but did decree that upon payment by the plaintiff to the defendant of $13,155.82, together with such taxes and interest on mortgages as defendant had paid, the latter should convey the land to plaintiff subject to the mortgages existing on the real estate when a bond for a deed was signed. The plaintiff appeals.

The facts in the case appear from the following findings of fact made by the court, which include its conclusions of law:

"This matter was heard upon a motion to modify and set aside certain findings of fact heretofore made, and in compliance with such motion I have included certain of the original findings, modified certain others and included new findings, so that these findings of fact will now be considered as the findings of fact in the case:

"1. The plaintiff, during 1925, was indebted to the defendant on certain promissory notes in the amount of $13,558.20, and as surety on an additional note of $1,070.86. He was a farmer and cattle raiser, had been dealing with the defendant a good many years, but was financially unable to pay the notes at the time, and the bank was insisting upon payment.

"2. The plaintiff, in 1925, was the owner of two eighty-acre tracts of farm land, and 280 acres of grass land in addition to his homestead of 160 acres, the homestead entering into this lawsuit incidentally only.

"3. On all of the above land there were blanket mortgages in November, 1925, aggregating in excess of $19,000.

"4. In order to effect a settlement on these notes, the plaintiff and defendant entered into an agreement providing, in substance, that the plaintiff turn over the 440 acres of land, not including his homestead, to the bank in exchange for the cancellation of the notes, providing that the bank would give him an opportunity to repurchase the land within three years, and provided further that the defendant would grant him a lease covering the land for such three-year period at a rental of $1,200 per year, cash rent. This agreement was reduced to writing in the usual banker method, in five separate and apparently unrelated instruments, copies of which are attached to the pleadings as follows:

" 'The lease from the defendant to plaintiff as exhibit A of the petition; the so-called "bond for deed," running from the defendant to the plaintiff, as exhibit B of the petition; the warranty deed conveying the farm land from plaintiff to defendant as exhibit A of the answer, and the warranty deed covering the grass land from plaintiff to. defendant as exhibit B of the answer, and the receipt for the notes given by the defendant to plaintiff as exhibit C of the answer. No one else, except possibly a real-estate dealer, could have thought of more instruments to have achieved the simple result intended.'

"5. The pertinent portion of the bond for deed, around which this suit turns, reads as follows:

" 'That the Citizens State Bank of Sterling, Kansas, in the county of Rice, state of Kansas, party of the first part, is held and firmly bound unto Sam Haston, party of the second part, in the sum of thirteen thousand one hundred fifty-five and no/100 dollars.

" 'The condition of this obligation is such, that said party of the first part has agreed to grant, sell and convey unto said party of the second part, the following-described real estate, situated in Reno county, and state of Kansas, to wit: (here follows a description of the real estate) for the sum of thir- teen thousand one hundred fifty-five and 82/100 dollars, to be paid .on or before March 1, 1929.

" 'Now, if said party of the first part shall, on or before the 1st day of March, 1929, and upon full payment of said sum and sums of money, execute and deliver to said party of the second part a good and sufficient warranty deed, conveying an absolute and indefeasible estate, in fee simple, with the usual covenants, in and to said tract and parcel of land, then this obligation shall be void; otherwise to remain in full force and effect.'

"This bond for deed is properly executed.

"6. This land was conveyed to the defendant by the plaintiff subject to mortgage indebtedness, as follows:

| | |
|---|---|
| E½ of NE¼, 10-22-9 | $3,380.00 |
| W½ of S½ of 3-22-9 | 3,310.00 |
| NE¼ of W 120 acres and NW¼ 3-22-10 | 2,500.00 |
| A total indebtedness of | $9,190.00 |

"7. The value of the land at the time of the conveyances to the bank is as follows: The two eighty-acre tracts, $10,000, and the grass land $2,500, or a total of $12,500, leaving an equity worth approximately $3,310. However, the president of the defendant bank, who handled all the preliminary negotia-

tions between the bank and plaintiff, thought the value of the real estate was considerably higher and thought this equity was worth between $5,000 and $6,000 at the time of the transaction.

"8. For the purpose of the negotiations the president of the bank placed the value of the equity at approximately $8,000 and, in substance, was willing to deal with the plaintiff on the basis of trading the equity in the land for the notes. These equities, outside of his homestead and a ten-acre piece of farm land near Coffeyville, Kan., variously valued at from $300 to $1,500, was all the property the plaintiff had.

"To this trade the plaintiff agreed, but with the added proviso that he should be permitted to 'redeem' the land and be permitted the privilege of leasing the land for the three-year period in which his right to 'redeem' should run.

"The president of the bank also believed that he was making the best settlement possible for the bank, believing that had the bank brought suit on the notes, secured judgment, levied execution on the land and finally purchased the land at sheriff's sale, it would have secured no more than it did under the contract, which he finally entered into with the plaintiff, and in addition to other losses the bank would have had to pay the expenses on the suits.

"9. At a directors' meeting of the defendant bank on November 30, 1925, at which the plaintiff was present, negotiations looking to the cancellation and surrender of the plaintiff's notes, and the conveyance to defendant bank of the equities in the land were had. At this meeting, after considerable discussion, the following motion was adopted by the directors:

" 'It was moved, seconded and carried that we accept a deal from Sam Haston to E½ 10-22-9 and S½ SW¼ 3-22-9, and 280 acres on N½ sec. 3-22-10, surrendering to him notes as follows: $5,000, $5,000, $200, $100, $1,300, and $873.31, and accrued interest thereon, and give him a bond for deed, covering same amount on same land for a three-year period, he to pay $1,200 cash rental per year for the land, the bank to take care of the interest on mortgages on land in the amount of $9,066.67, and taxes.'

"It was the intent of the directors that if the bank paid any of the mortgages it would receive its money back and in redeeming the land Haston would assume the mortgages, although such intent is not stated in the motion but must be found from the testimony of the directors present at the meeting.

"O. J. Windiate, the then president of the bank, was directed to have the proper instruments executed. That all the instruments which were executed in connection with this transaction, save and except the bond for a deed, are admitted to be satisfactory. Pursuant to the direction, O. J. Windiate requested of E. T. Foote, the bank's attorney in Hutchinson, Kan., a form or copy of a bond for deed. Thereupon said attorney had his secretary copy a form of bond for deed out of a form book, and inserted therein the names of the parties and the description of the land, but left out of the bond for deed the amount of the consideration and any conditions concerning the transfer and thereupon mailed the form to the bank president at Sterling, Kan.

"10. Shortly before the time expired as provided in the bond for a deed, the plaintiff tendered to the defendant the sum of $13,155.82 and demanded in writing that the land described in the bond for deed be conveyed to him, which demand was as follows:

" 'The Citizens State Bank, Sterling, Kan.:

" 'GENTLEMEN—The undersigned, Samuel Haston, hereby offers and tenders to the Citizens State Bank of Sterling, Kan., the sum of $13,155.82, and demands of the said The Citizens State Bank of Sterling, Kan., under the terms of its bond executed to the undersigned, of date, the 2d day of December, 1925, filed for record in the office of the register of deeds of Reno county, Kansas, on the 2d day of May, 1926, and recorded in book 19, at page 496, that the said, The Citizens State Bank of Sterling, Kan., execute and deliver to the undersigned a good and sufficient warranty deed, conveying an absolute and indefeasible estate in fee simple with the usual covenants in and to, the following-described real estate situated in Reno county, Kansas, to wit: (Then follows description of property.)

" 'That you furnish the undersigned with an abstract of title showing that said real estate is clear and free of any liens for taxes, mortgages or other encumbrances of any kind whatsoever, and that you have good right to convey the same.' (Date and signatures.)

"11. The defendant bank is able and willing and has offered to execute the warranty deeds to the real estate in all respects as demanded by the plaintiff, except that such deeds shall be subject to the mortgages existing on said land at the time of the execution of the bond for a deed."

CONCLUSIONS OF LAW.

"Since making the additional finding of facts required by the evidence, it is necessary that the conclusion of law heretofore reached in this case be set aside. The minds of the parties did not meet at the time of the execution of the bond for a deed; the president of the bank did not have authority to bind the bank beyond the express authority given him at the directors' meeting. I therefore refuse to decree specific performance, but do decree that upon payment to the defendant of any and all sums due it from plaintiff; that is, the $13,155.82, plus taxes paid by the defendant bank since March 1, 1929, if such taxes have been paid by the defendant and interest paid by the defendant on the existing mortgages on said land accruing since March 1, 1929, within a reasonable time hereafter, and it is my opinion that thirty days is a reasonable time, the bank shall deed the land to the plaintiff subject to the mortgages existing at the time the bond for deed was entered into and in all other respects as agreed in the bond for deed. The costs are taxed against the plaintiff. J. G. SOMERS, Judge."

Was the plaintiff entitled to specific performance of the contract in accordance with the terms of the bond for a deed as written, and if not, to what equitable relief was he entitled? The defendant bank defended upon the theory that .there were omissions and mistakes in the writing of the bond, and that it did not express the entire contract, nor yet the intention of the parties. As revealed by the findings of fact, plaintiff had acquired considerable acreage of farm and grass land and had been engaged for years in the cattle business. Because of a slump in that business he had sustained losses and had placed mortgages on his land covering the tracts involved in this

suit, and also other lands not in question here. He had borrowed money from the defendant bank and executed notes for the loans, and default had been made on the notes, which indebtedness in the aggregate was $13,155.82. He had also become obligated to the bank as a surety on another note to the amount of $1,070.86. The bank had been pressing him for payment, but he had no available means except two eighty-acre tracts of farm land and 280 acres of grass land. Besides, he had 160 acres which constituted his homestead and was not included in the transaction in suit. Blanket mortgages covered all of these lands, which had been given to secure an indebtedness of more than $19,000. Negotiations were begun between the parties as to the payment of the indebtedness to the bank, which, as shown, amounted to $13,155.82. The negotiations resulted in an agreement that deeds were to be executed by plaintiff to the defendant on the several tracts, in satisfaction and cancellation of the notes held by the defendant. An agreed allocation of the extent of the blanket mortgages to each tract was made. One deed covered the two eighty-acre tracts, in which it is recited that:

"It is also agreed that said west one-half of the south one-half of the south half of section three, township twenty-two south, range nine west of the sixth P. M., Reno county, Kansas, is conveyed subject to indebtedness of $3,310, the same being the proportionate part which said eighty should bear of indebtedness secured by two certain mortgages covering the said eighty acres and other land. The said grantors agree to pay the balance of the sum secured by said two mortgages, which amount is thirty-three hundred ten dollars ($3,310), and agreed that the other land included in said two mortgages (excepting the east half of the northeast quarter of 10-22-9) shall pay all of said indebtedness except such part as is secured by said west half, south half, south half section 3-22-9 above described and provided for. The said two mortgages covering above W½ S½ S½, 3-22-9, being described as follows:" (Then follows a list of the mortgages on the different tracts and the amounts apportioned to each tract.)

There was an agreement to the effect that in case of a foreclosure of any of these mortgages the court should enter such judgment as will protect and preserve the rights of the parties as herein provided, and still another stipulation that if the holders of any mortgages covering these lands are willing, the Citizens State Bank may pay part of the indebtedness to be borne by the tract and secure the release of mortgages on another tract: "The grantors herein expressly waiving the benefits of all exemption laws of the state of Kansas 'relating to the fulfillment of the above contract on their part." The

deed conveying the grass land, 280 acres, covenanted that the plaintiff was the owner of an absolute and indefeasible estate of inheritance in fee simple, free and clear of all encumbrances, taxes, assessments, etc., except one certain mortgage of $2,500 to C. M. Williams, together with the interest due thereon, with the ordinary clause of warranty against the plaintiff and his heirs and everyone else. In a reply, besides a general denial, plaintiff specifically denied that the bond for a deed did not speak the real agreement between the parties. The deeds were delivered to defendant and defendant canceled and returned the notes of plaintiff, amounting to $13,155.82. Receipts for the notes were also given. It was a part of the agreement in the exchange of the 440 acres of land for the cancellation and delivery of plaintiff's notes, that plaintiff should have an opportunity to repurchase the land within three years and that during that period the defendant would lease the land so transferred to the plaintiff at a rental of $1,200 per year. The lease was executed and the bond for a deed given under the last-mentioned provision for the reconveyance of the land to plaintiff. All of these papers, five in number, constituted a single transaction and all were made without specific reference to each other, but manifestly all were evidences of the contract made. The bond for a deed, it is manifest, did not express the full agreements of the parties as evidenced by the other writings that were made as part of the transaction, but by mistake was filled out on a particular form without covering the provisions of the entire contract and contrary to the intention in making the contract.

Before the lapse of the three-year period mentioned for the redemption of the land in accordance with the agreement of the parties, plaintiff demanded the reconveyance of it by a good and sufficient warranty deed conveying an absolute estate in fee simple, free and clear of all liens for mortgages, taxes or encumbrances of any kind. This was in consonance with some language in the bond for a deed, but plainly at variance with the other writings which formed a part of the contract, and was manifestly contrary to the intention of the parties. It appears that the defendant had asked an attorney for a copy of a bond for a deed and that the attorney had his secretary copy one from a form book, which was sent to the defendant and which omitted the consideration and the conditions concerning the retransfer of the land, and without noticing the omission and noncompliance with the conditions of the contract, it was executed.

Notwithstanding the mistake and the evidence disclosed by the other writings, the plaintiff demanded that he be given an absolute fee simple conveyance free and clear from all mortgage liens amounting to many thousand dollars, as well as free of any liens for taxes. It is clear that there was nothing in the contract which amounted to an assumption of the mortgage debts.

Upon the evidence, which is deemed to be sufficient, the court found that it was the intent of the bank that if it paid any of the mortgages the money would be refunded to it and in redeeming the land Haston would assume the mortgages. There was no question about the amount of the indebtedness represented by the notes which were canceled and surrendered in exchange for the equities in the land. This amount was recognized by plaintiff, but when he demanded redemption of the land he tendered $13,155.82, the amount of the canceled notes. He was not then claiming a right to redeem for any amount less than the actual amount of the canceled indebtedness. He did demand the reconveyance of the land by a warranty deed with the usual covenants conveying the absolute estate in fee simple free from the mortgage liens or encumbrances of any kind. His demand accorded with provisions in the defective bond, but was repugnant to the other instruments constituting the agreement, and also repugnant to the intent of the parties. The lands were conveyed by plaintiff to defendant subject to the blanket mortgages, and in case of redemption he had no right to a reconveyance of them scot-free from the large blanket mortgages nor free from advancements made by defendant to protect the equities in the lands during the three-year period. It would be unjust and inequitable under the circumstances to enforce specific performance of the incorrect bond for a deed, and it is well settled that the granting of that relief rests to quite an extent in the sound judicial discretion of the court. In the early case of *Fowler v. Marshall*, 29 Kan. 665, it was held that:

"Upon breach of a contract for the sale of real estate, it is not a matter of course for the court to enter a decree of specific performance. That will be done only when upon all the facts it is equitable it should be done.

"He who asks specific performance should show the facts which make such a decree equitable; and a failure to do this justifies a refusal of the decree." (Syl. ¶¶ 1, 2.)

In *Shoop v. Burnside*, 78 Kan. 871, 98 Pac. 202, syl. ¶ 1, it was decided that—

"Specific performance is not a matter of right but of equity, and rests in the sound legal discretion of the court. Before the relief will be granted the contract must appear to have been entered into with fairness and without any undue advantage or imposition, and the facts and circumstances must be such as appeal to the conscience of the court and compel its discretion."

See, also, *Young v. Schwint,* 108 Kan. 425, 195 Pac. 614; *Milling Co. v. Waite,* 112 Kan. 809, 213 Pac. 160.

The defendant was warranted in making the defense it did and under the authorities the relief asked may be denied where the facts show that specific performance ought not to be enforced and may even be refused where the evidence might be insufficient to give equitable grounds for reformation or rescission of the contract the parties had attempted to make. (3 Williston on Contracts, § 1427.) A mistake in the execution of an instrument so that it does not express the real agreement of the parties may be used either defensively or affirmatively in the matter of its enforcement in a court of equity. (Pomeroy's Equity Jurisprudence, 4th ed., §§ 868, 2199.) We think there was no error in refusing specific performance.

The court having found that plaintiff was not entitled to that relief, proceeded to determine the rights of the parties in the transaction. Reformation had not been sought, but the court having all the parties before it and the evidence as to the terms of the agreement, had authority to determine the issues and administer equity between them. This it did, based upon the documentary and oral evidence, and gave the plaintiff the right of redemption upon payment of the stipulated sum due to the defendant, $13,155.82, together with such taxes as it had paid since March 1, 1929, and also the interest it had paid on mortgages since that time. A reasonable time was given plaintiff for making the payments, and upon doing so the defendant was required to execute deeds to the land subject to the mortgages existing at the time of the exchange. It was shown that the defendant was able and had offered to execute deeds conveying the lands to the plaintiff subject to the mortgages at the time the bond for a deed was executed. We think the decree is in harmony with equitable principles and should be carried out.

The negotiations preliminary to the execution of the instruments relating to allocations of the mortgages to the different tracts of land were not material nor controlling as to the exercise of the option of redemption within the three-year period. Manifestly that was done in view of the possibility that the mortgages might be

foreclosed during that period and the mortgages, it appears, covered other lands than those conveyed to defendant. There is no assumption of the mortgage debt by the defendant and, as we have seen, there was an agreement that in case of a foreclosure of any of the mortgages the court should enter a judgment that would protect and preserve the rights of the parties in accordance with their agreement.

Error is assigned on the admission of parol evidence of the contract which was contrary to the terms of the bond. The question being whether the bond was incorrect and did not express the real contract, it was competent to show by oral evidence that there were omissions, and also that the writing did not express the real contract. In such a case the parole rule does not apply. (*Casten v. Kreipe*, 125 Kan. 182, 264 Pac. 55; *Higgins v. Linn County Bank*, 127 Kan. 772, 275 Pac. 143.)

The judgment is affirmed.

SLOAN, J., not participating.