No. 30,660.

LEO FORRISTAL, *Appellee*, v. THE SECURITY INSURANCE COMPANY, *Appellant.*

(12 P. 2d 790.)

Opinion filed July 9, 1932.

*C. W. Burch, B. I. Litowich* and *La Rue Royce,* all of Salina, for the appellant.

*David Ritchie* and *Alex H. Miller,* both of Salina, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by Leo Forristal against Security Insurance Company of New Haven, Conn., to reform and enforce an insurance contract. Plaintiff prevailed, and defendant appeals, contending that the contract was not open to reformation, that the plaintiff had no right to such relief and that the trial court erred in the admission of evidence and in the instructions given to the jury.

The plaintiff was the owner of an undivided one-half interest in a crop of wheat. His mother, Helen Forristal, was the owner of 102 acres of land on which the wheat was planted. The plaintiff made

an agreement with his mother to the effect that she would furnish the land, the seed and certain machinery, and that he would plant, harvest and thresh the crop, and that each would be entitled to receive one-half of the wheat grown on the land. On May 12, 1928, the defendant, through its agent, H. A. Nelson, solicited the plaintiff to take out insurance on the wheat crop, as against destruction by hail, and after considerable negotiations about the way in which the entire crop might be insured, he advised them that it could be done in the name of Mrs. Forristal, who was the owner of the land and of one-half of the crop. The agent, after being informed that plaintiff owned one-half of the crop, prepared the application, which was signed by plaintiff's mother alone. The application covered the insurance of the whole crop and a note was given by her for the premium, which was accepted by the defendant in payment of the insurance on the entire crop. On May 18, 1928, a hailstorm occurred in that locality which completely destroyed the wheat. The defendant settled with and paid Mrs. Forristal her loss of one-half of the crop, but declined to pay the plaintiff for the loss of the part that he owned because of the fact that his mother alone had signed the application for insurance. Plaintiff then brought this action, asking first for a reformation of the contract of insurance so that the same will cover and include the wheat hereinbefore described, belonging to this plaintiff, and protect the same against hail in accordance with the oral agreement and pursuant to the intention of said parties when the hail insurance contract was made. On the trial the court ruled that the policy or contract was subject to reformation, and upon reforming the contract a trial of the case followed and the jury found upon sufficient evidence that plaintiff was entitled to recover his loss, amounting to $803.13. Judgment was rendered for that amount, from which this appeal was taken.

Defendant contends first that the court was not warranted in reforming the contract, that a party could not be added or substituted for the one appearing on the face of the contract, that the contract was intentionally made in the name of plaintiff's mother and was not so made by mistake, accident or fraud, and that the plaintiff cannot have it reformed and recover on another contract which they did not intentionally make.

There is evidence that the intention of the parties was to insure the whole crop of wheat owned by both plaintiff and by his mother. The agent was informed that plaintiff owned a definite interest in

the property which was included in the contract, and undertook to write a policy covering the whole crop. When the agent asked the plaintiff to insure his wheat, plaintiff said he had thought of insuring it with another, but "I believe I will change companies, and when you write my mother's insurance you write my insurance in the same policy, and I will stand for half of the note." I then asked Nelson if that would be all right, and he said "Yes," adding, "The superintendent of his company said that in case of a family affair, it wasn't so bad." Shortly afterwards the agent of the insurance company called on plaintiff and asked him how much insurance he wished to take on his wheat, and plaintiff replied:

"Well, Henry, it looks pretty good, and I believe it will stand $12 an acre, but whatever you write on mother's you write that much on mine. We are farming this 50-50. I own half and she owns half."

Then the agent visited Mrs. Forristal and prepared the application for insurance. She asked him if Leo's name was in the application, saying that Leo's name ought to be on there because they were half and half in the wheat, and the agent told her that it was not necessary. At the trial the agent testified that it was the intention to cover all the wheat on the land that Leo was working, that of Leo as well as that of his mother. The insurance was paid for all of the crop and later a policy was written by the central office covering all of the wheat. While the interest of plaintiff in the wheat was severable and separate, and should have been so written, the insured plaintiff evidently relied on the superior knowledge and experience of the agent, who advised plaintiff that it was a proper way to insure his share of the wheat. It is also apparent that the agent was acting in the belief that the contract as written would cover the whole crop and be a protection to both plaintiff and his mother, inasmuch as it was a family affair. Apparently it was a mutual mistake and free from any fraudulent purpose. There is no doubt as to the intention of the parties in making the contract and we see no obstacle in reforming it so as to conform to the understanding and agreement of the parties. It is said that plaintiff was not a party to the contract, that his name did not appear either on the face of the application or the policy subsequently issued, and that the application and policy were purposely made in the name of his mother as the parties intended they should be written. The parties were mistaken as to the proper way to express in writing the agreement they had made, but there was no mistake as to the insurance

contract being intended to cover the wheat of both plaintiff and his mother. Nor was there any mistake in the amount of the premium demanded and paid, which was an amount sufficient to pay insurance on the plaintiff's interest as well as that of his mother. The mistake was that the contract as written did not fully express the meaning and intention of the contracting parties.

"Under the law of reformation of instruments, the contract and not the false instrument is the controlling thing, and the evidence of the contract is made to do what it is designed to do, show what the contract was." (*Casten v. Kreipe,* 125 Kan. 182, 187, 264 Pac. 55.)

The fact that a written contract omits the name of a contracting party and mistakenly asserts the name of another does not bar the remedy of reformation. In *Stewart v. Falkenberg,* 82 Kan. 576, 109 Pac. 170, it was held that a chattel mortgage in which the wrong name of the mortgagee was written in the instrument might be corrected by inserting the name of the real party in accordance with the intention of the parties, and that the reformation could be accomplished in the same action in which it is sought to be enforced. (See, also, *Pfiester v. Insurance Co.,* 85 Kan. 97, 116 Pac. 245.)

The early case of *Snell v. Insurance Co.,* 98 U. S. 85, was quite similar to the present case, where a partner in the firm of Snell, Keith & Taylor applied for insurance on a stock of cotton belonging to the partnership, of which Samuel L. Keith was a partner. The agent to whom the application was made by Keith was informed that the cotton was owned by the partnership and that he was a member of the firm. The policy was taken out in the name of Keith as owner. The cotton was destroyed by fire and the insurance company denied liability on the ground that Keith was not the owner of the cotton and that according to the contract of insurance concerning ownership the policy was void. In an action brought to reform the policy so that the insurance would be payable to the partnership to the extent of the loss, the remedy of reformation was granted on the ground that the agents had knowledge that the cotton was owned by Snell-Taylor & Co., and not by Keith individually, and they had induced him to believe they were insuring in his name the interest of the firm. He assented to the insurance being taken in his name because of the representation and agreement that the interest of the firm would be fully protected against loss by fire. In the course of the opinion it was said:

"In the case under consideration the alleged mistake is proven to the entire

satisfaction of the court. It is equally clear that the assent of Keith to the insurance being made in his name was superinduced by the representation of the company's agent that insurance in that form would fully protect the interest of the firm in the cotton. We assume, as we must from the evidence, that this representation was not made with any intention to mislead or entrap the assured. It is, however, evident that Keith relied upon that representation, and, not unreasonably, relied also upon the larger experience and greater knowledge of the insurance agents in all matters concerning the proper mode of consummating, by written agreement, contracts of insurance according to the understanding of the parties. He trusted the insurance agents with the preparation of a written agreement which should correctly express the meaning of the contracting parties. He is not chargeable with negligence, because he rested in the belief that the policy would be prepared in conformity with the contract." (p. 91.)

See, also, *Dearborn v. Ins. Co.*, 17 N. Mex. 223; *Horine v. Royal Ins. Co.*, 199 Mo. App. 107; *McIntosh v. Insurance Company*, 152 N. C. 50; *Globe Ins. Co. v. Boyle et al.*, 21 Ohio St. 119; 26 C. J. 103, 104.

Objections were made to the admission of oral evidence because it was an attempt to vary the terms of a written instrument by parol testimony. The rule invoked is not applicable to actions for reformation. In *Casten v. Kreipe*, supra, it was said:

"The nature of an action for reformation is such that it is outside the field of operation of the parol-evidence rule. Apparently it has been necessary to say this in most cases in which decrees of reformation have been approved. It has now been said so often the court should be relieved from encumbering the pages of the reports with citations of authority." (p. 184.)

Some criticism of the instructions is made, but on an examination of these we find them to be without materiality.

Attention had been called to other objections which we deem to be without merit.

The judgment is affirmed.

BURCH, J., not sitting.