Sneed, J.,
delivered the opinion of the Court»
The bill is filed to reform a promissory note which, by a mistake of the draftsman thereof, does not contain the contract of the parties. The note is of date the 8th January, 1863, and promises to pay the defendant $2,050, which may be discharged in current bank notes twelve months after date. The allegation is that the defendant, a citizen of Jefferson county, had a public sale of negroes on -the 8th January, 1863, in said county, and caused it to be announced by the auctioneer at the time and place, that the sale would be on a credit of twelve months; and that he would receive current bank notes in payment. The answer admits that such is the fact; that it was understood and agreed between the vendor and the purchasers at the sale that the slaves were to be paid for in current bank notes, but insists upon the right of respondent to be paid in United States currency, which the answer alleges was the currency of the country at the time of the maturity of the note.
The complainant bought at the sale, a negro woman and her two children, which were bid off to him at $2,050. The auctioneer wrote the notes that were given by the purchasers. The note of the complainant was written for the sum stated as two thousand and fifty dollars, which may be discharged in current bank notes.
The note of another purchaser was written by the purchaser himself for so “many dollars in current bank *717 notes,” and seems to have been accepted by the defendant as embodying the contract. ' It is abundantly shown in the proof that the understanding and intention of all parties was, that the slaves were to be paid for in current bank notes; that the contracts were made with special reference to the notes of certain State banks then current in that locality; and that the price agreed to be paid which seems extravagant, if not fabulous, in view of the uncertain character of such property at the time,, was referable to the fact that Southern bank, paper was lapsing at the time, into gradual depreciation. It was shown, also, that among the business men and' the people the terms “current bank notes” meant such Southern bank paper as circulated in that vicinity at par before the war, and that of this character had been the bank paper then circulating. That when the note fell due, and for two months thereafter, the same bank paper was still current, though much depreciated. It is shown, also, that an effort of complainant to make a payment on the note, á few days after its maturity, was prevented by respondent’s absence from home. The bill seeks an injunction of a suit at law upon the note, already begun by defendant, and the adjustment of the rights and equities of the parties in the Court of Chancery. The decree of the Chancellor was in fayor of the complainant, from which the defendant has appealed.
The jurisdiction of a court of equity to reform a written contract of any grade or dignity, whether sealed or unsealed, upon parol evidence, when mistake or fraud has intervened to defeat the intention of the parties, *718 has never .been seriously questioned in Tennessee. 9 Ycrg., 266; 2 Hum., 72. Though doubt and controversy have grown out of the doctrine, yet they are to be referred to the difficulty of reconciling this ancient prerogative of a court of equity with the inexorable and sometimes subtle doctrines of the common law, which rejects parol evidence to alter or control -written contracts. In the case of Henkle v. Royal Assurance Co., 1 Vesey, 314, Lord Hardwick observed, that there is no doubt but this Court has jurisdiction to relieve in respect of a plain mistake in contracts in writing. So that if reduced into writing contrary to the intent of the parties, on proper proof, the mistake would be rectified. In the case of Hunt v. Rousmanier’s Adm’rs, 1 Pet., 1, the Supreme Court of the United States use this language: “There are certain principles of equity applicable to this question, which, as general principles, we hold to be incontrovertible. The first is, that when an instrument is drawn and executed, which professes or is intended to carry into execution an agreement, whether in writing or by parol, previously entered into, but which by mistake of the draftsman, either as to fact or law, does not fulfill, or which violates the manifest intention of the parties to the agreement, equity will correct the mistake so as to produce a conformity of the instrument to the agreement.” Vide 7 Curt., 423, 424; 1 Greenl. Ev., 152; 2 Johns’ C. R,., 585; 1 Hum., 433; 8 Hum., 230; 11 Hum., 355; 1 Head, 230.
The great difficulty in such cases, arises upon the *719 evidence. The “proper proofs” referred to by Lord Hardwick mean something more than cogent inference or strong probability, generated by the evidence.
The case must be made out by proofs entirely satisfactory, says Mr. Justice Story. “For,” said he, “if the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief, upon the ground that the written paper ought to be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy. 1 Story Eq. Jur., § 152. But the distinction to be observed is, that there can be no relief in equity when there is a mere misapprehension as to the matter of law, as when the mistake is as to the legal deduction from the facts truly recited. 2 Hum., 72, 78, 148, 151. In this case, the mistake is in the recital of a fact as to the manner of .payment, which was in positive violation of the contract of the parties.
Now, it is true that the words, “current bank notes” have been interpreted to mean that which circulated as ¡money, and which, in the absence of proof to the contrary, is presumed to be of value equal to money. Baker v. Jordon, 5 Hum., 486. But it was legitimate to prove in this case, by parol, what meaning the parties themselves intended to fix upon those words, and to show that they contracted with special reference to the bank notes then the circulating medium of the country where the contract was made. Thorington v. Smith, 8 mi., i2.
We are of opinion that the complainant is entitled *720 to the relief sought, and that he has fully made out his case by “proper proof/’ in the sense of the law.
The decree of the Chancellor is affirmed, and the case remanded to the Chancery Court at Dandridge for further procedings.