No. 28,523.

ROBERT B. HIGGINS et al., *Appellees*, v. THE LINN COUNTY BANK, *Appellant*.

(275 Pac. 143.)

Opinion filed March 9, 1929.

*John A. Hall*, of Pleasanton, *Charles H. Apt* and *Frederick G. Apt*, both of Iola, for the appellant.

*John W. Brown* and *Kenneth H. Foust*, both of Iola, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: The plaintiffs brought this action to cancel a $300 mortgage on a tract of land which the bank had conveyed to them. The petition alleged that the bank conveyed to plaintiffs by general warranty deed a tract of land which recited a consideration of $10,000 and is a general warranty deed, except "one certain mortgage to the Kansas Reserve Investment Company of $6,000 which the parties of the second part assume and agree to pay as part of the purchase price," and that the deed was duly acknowledged and re-

corded on April 2, 1927. They allege they entered into the possession of the real estate and have been ever since that time in the peaceable possession of the same, and are the legal and equitable owners subject to the mortgage of $6,000. Further, it is alleged that the plaintiffs relied upon the representations and covenants in the deed to the effect that the land was free and clear of liens except the $6,000 mortgage and that they paid a consideration of $10,000 therefor. They then allege that on May 19, 1927, they learned that a former owner, Collins, and wife had delivered a mortgage for $300 which was duly recorded on March 16, 1925; that it was made to secure three promissory notes for the sum of $100 each, due February 1 of each year, beginning with 1926. In the mortgage it was recited that:

"It is distinctly understood that the notes secured by this mortgage are given for and in consideration of the services of the Kansas Reserve Investment Company in securing a loan for said parties of the first part, which loan is secured by the mortgage hereinbefore referred to and accepted, and the said notes do not represent any portion of the interest on said loan, and are to be paid in full regardless of whether said loan is paid wholly or partly before its maturity."

It recited that it was subject to the $6,000 mortgage of the same date, and it contained an accelerating clause as to any or all of the remaining notes, if default be made on one of them. It was alleged that this mortgage was not released at the time the appellant delivered its deed and that the same casts a cloud upon the title of plaintiff and hinders the right of alienation. The mortgage appears to have been purchased by the bank, and on May 19, 1927, it made a written demand on the plaintiffs to pay the note accruing on the first of June of that year. The plaintiffs then demanded that the bank cancel the $300 mortgage in accordance with the provisions of the general warranty deed, but this was not done, and therefore the action was brought for the cancellation of it and plaintiffs also asked for damages for the refusal to cancel.

The bank filed an answer and cross petition consisting of a general denial and allegations relating to transactions in the exchange of land in Linn county owned by Higgins for land in Allen county owned by the bank. It was alleged that the Collins mortgage mentioned, executed in 1925 to secure the payment of $6,000 borrowed from an investment company, was payable in five years with interest at six and one-half per cent payable semiannually, except that one per cent of the interest should be included in three notes of

$100 each, payable on the first day of February in 1926, 1927 and 1928, and the mortgage securing them was spoken of as a commission mortgage. It was then alleged that on January 27, 1927, Higgins and the bank entered into a contract for the exchange of lands in which Higgins agreed and assumed to pay the mortgage for $6,000 upon the Allen county land transferred to him. The deeds were to be executed and placed in escrow, each party to furnish abstracts of title. That when the contract was made it was orally agreed as a part of it that the Allen county land conveyed to Higgins upon which the $6,000 mortgage existed, bearing interest at five and one-half per cent, was also to be subject to the payment of the two $100 notes coming due February, 1926 and 1927, aggregating six and one-half per cent for the time of the loan, the bank to pay the first of the three notes which would become due before possession of the land could be given. It was alleged that through oversight and inadvertence the contract failed to specify the rate of interest, and also failed to state that Higgins took title subject to the unpaid commission notes. It was alleged that Higgins and his wife knew at the time of the execution of the contract that Higgins was to pay the two remaining notes, and that the real estate which Higgins was purchasing was subject to the lien of the second mortgage securing these notes. It was averred that Higgins and his wife well knew that the deed was in fact executed subject to the principal mortgage of $6,000 and the second mortgage to the amount of two commission notes, and that through oversight and mistake in writing the papers, including the deed, the commission mortgage was not mentioned as an encumbrance upon the land, but that throughout the transaction Higgins and the bank both considered the second mortgage and commission notes to be a part of the same transaction, and that the interest on all should be at a rate of six and one-half per cent for the five-year period. It is further alleged that with a full understanding and agreement on the part of each, that the principal note in effect carried a six and one-half per cent rate of interest, except that the payment of one note by the bank made the interest on the principal slightly less than six and one-half per cent per annum, and that Higgins in fact assumed the two remaining notes as a part of the interest due upon the principal note, and agreed to discharge the same.

It was then averred that on March 21, 1926, the bank purchased the two remaining notes, and is the owner and holder of them as

well as the mortgage securing them. In addition it is stated that Higgins had in his possession the abstract which showed both the $6,000 mortgage and the $300 mortgage, and that he accepted the abstract and title without objection, knowing that the title was subject to the commission mortgage as well as the $6,000 mortgage. That the transactions culminating in the contract were not completed until about April 21, 1927, and that Higgins carried on the negotiations with full knowledge that he was to pay the second and third commission notes, and that when these were paid that thereafter the interest on the loan would be but five and one-half per cent. The bank prayed judgment for a reformation of the contract so that the contract and instruments would express the real agreement made between the parties. Added to the answer was a cross petition asking for the judgment upon the two notes and the foreclosure of the commission mortgage. The plaintiffs demurred to the answer and cross petition on the ground that they do not state sufficient facts to constitute either a defense or a cause of action against plaintiffs. The court sustained the demurrer and also refused permission of the bank to amend its answer and cross petition. The bank appeals.

The principal question to be determined is whether the defendant was entitled to reformation of the agreement and instruments by which the exchange of properties was made. On the face of the contract and instruments the $300 mortgage was not a part of the interest charged, and was not assumed to be paid by the plaintiffs. It is alleged by the defendant, however, that through inadvertence and mistake certain provisions agreed upon were omitted in the instruments, and defendant asks that they be reformed so as to recite the real intention and agreement of the parties. The allegations of the answer and cross petition state grounds for reformation. It is urged that the terms of the instruments are plain and unambiguous and defendant insists that this action is an attempt to vary the terms of written instruments by parol evidence contrary to the rule that it is not competent to contradict or vary the terms of written agreements by parol proof, but an equitable action for reformation is one instance in which the rule does not obtain. In that action it may be shown by such evidence that the agreements or writings through mistake or fraud do not express the real contract which was made by the parties and that it is proper for a court of equity to reform them so as to speak the truth whether

the agreements express more or less than the parties intended. It has been said:

"In equitable actions to reform written instruments to accord with the agreement of the parties, such testimony is competent (23 R. C. L. 366), otherwise frequently meritorious reformations could not be made." (*American Nat'l Bank v. Marshall,* 122 Kan. 793, 796, 253 Pac. 214.)

In *Casten v. Kreipe,* 125 Kan. 182, 264 Pac. 55, it was decided that—

"The nature of the action for reformation is such that it is outside the field of operation of the parol evidence rule." (p. 184.)

Of course there can be no reformation for mistake unless it was mutual, or a mistake on one side and fraud on the other. If it is clearly shown that the written agreement or instrument fails to express the contract actually entered into by the parties, it may be reformed, whether there be omissions in it or stipulations contrary to the intention, agreement or understanding of the parties, so as to make it what the parties intended it should be. The defendant having alleged sufficient grounds for reformation, the demurrer to the defendant's answer and cross petition was erroneously sustained.

The court refused an application to file an amended answer, of which complaint is made. It may be assumed now that the principal question involved has been decided, permission will be granted to amend the pleading. For the error in sustaining the demurrer, the judgment is reversed and the cause remanded for further proceedings.