**RENTENBACH ENGINEERING COMPANY, CONSTRUCTION DIVISION, Plaintiff-Appellee,**

**v.**

**GENERAL REALTY LIMITED, et al., Defendants-Appellants.**

Court of Appeals of Tennessee, Eastern Section.

Dec. 6, 1985.

Application for Permission to Appeal Denied by Supreme Court March 3, 1986.

L. Anderson Galyon, III, Knoxville, for defendants-appellants.

Robert L. Crossley, Knoxville, for plaintiff-appellee.

## OPINION

GODDARD, Judge.

General Realty, Ltd., and its general partner, Sam Urman, appeal a judgment of the Chancery Court for Knox County which reformed a construction contract between General Realty and Rentenbach Engineering Company and awarded Rentenbach a judgment of some $503,000 including compounded pre-judgment interest on funds retained by the Defendants.

The Defendants appeal contending, principally, (1) that the Court improperly considered parol evidence to vary the terms of an unambiguous contract, which contained an integration clause, (2) that even if the parol evidence was properly admitted, the proof does not meet the clear, cogent and convincing standard, and (3) that the Court improperly compounded pre-judgment interest.

The facts giving rise to this litigation are as follows. Sam Urman, who was born in Israel and has some difficulty with the English language, purchased and then conveyed to General the Andrew Johnson Hotel property in Knoxville. He thereupon solicited bids for renovation of the property. Rentenbach submitted a bid of $4,439,-000, which was the low bid, but nevertheless exceeded the amount Mr. Urman intended to spend. Whereupon, conferences were had between Mr. Urman and his architectural firm, Cideco Architecture and Planning, Inc., represented by Roy Cecil Peters and Haim Zukerman, and representatives of Rentenbach, principally Joseph R. Talentino, to reduce the bid submitted.

After some negotiations culminating in a meeting between Mr. Talentino and Mr. Urman on the morning of March 24, 1981, the parties, according to Mr. Talentino, reached what he described as a hand-shake agreement regarding the contract. Mr. Urman denied that a deal was struck, but the Court found his testimony as to this point to be "very vague, rambling, not responsive and not specific as compared to Mr. Talentino's."

The agreement, as testified to by Mr. Talentino, called for deletion of a five percent contingency and was memorialized by an instrument prepared by Robert E. Rose, Executive Vice-President with Rentenbach, which provided in pertinent part the following:

### CONTRACT SUM

The Owner shall pay the Contractor in current funds for the performance of the Work, subject to additions and deductions by Change Order as provided in the Contract Documents, the Contract Sum of Three Million Seven Hundred Fifty Thousand Dollars ($3,750,000.00)

The Contract Sum is determined as follows:

(State here the base bid or other lump sum amount, accepted alternates, and unit prices, as applicable.)

| | | |
|---|---|---:|
| | Base Bid, dated February 10, 1981. | $ 4,439,000 |
| (1) | Deduct five percent (5%) contingency. | 211,380 |
| (2) | Deduct Items No. 1 thru 15, 18 & 19 of REC letter dated March 5, 1981 | 415,114 |
| (3) | Price adjustment per agreement between Mr. Sam Urman, URCO, Inc., and Mr. Joe Talentino, REC, on March 24, 1981. | 62,506 |
| | CONTRACT SUM | $ 3,750,000 |

The five percent contingency is an amount added to the contract, the specifics of which are set out in the specifications which were made a part of the contract. This fund would be available for any additional costs incurred by reason of unfore-

seen expenses arising during construction. The provisions provide that the amount remaining in the fund would be credited to the Defendants. Item three above set out reflects that Rentenbach reduced its profit some $62,500 to bring the bid within the budget of $3,750,000.

The Rose contract, as it came to be known, was not accepted, and a meeting was held on March 25, between 5:00 and 8:00 p.m. at the office of the attorney representing the Defendants, wherein a final agreement was reached and signed. Present at this meeting, which has been described in the record as a "general hubbub" with various people speaking on various subjects, were Robert A. Finley, attorney for the Defendants, Mr. Peters and Mr. Zukerman, the Defendants' architects, Mr. Urman, Mr. Talentino, Rentenbach's senior estimator, Robert E. Rose, Executive Vice-President with Rentenbach, and William A. Fortune, Rentenbach's President.

The contract ultimately signed did not delete the contingency clause, although according to Mr. Talentino he discussed it with Mr. Urman, who assented to its deletion.

Shortly after the contract was signed it came to the attention of Rentenbach that the clause had not been deleted, and Mr. Fortune wrote a letter to Mr. Finley to confirm the fact that a mistake had been made in this regard. Mr. Finley attempted to contact Mr. Urman, who was then out of the country, but was unable to do so. He thereupon signed as attorney for Mr. Urman a letter sent to him by Mr. Fortune, conceding that the contingency should have been eliminated.[1]

Upon Mr. Urman's return a change order was prepared and approved by the architect, deleting the contingency. Mr. Urman declined to sign the change order.

Mr. Finley, in explaining his signature on the Fortune letter, testified that he was relying upon Mr. Fortune's representation that this was in fact the agreement when he signed on behalf of the partnership.

Turning now to the first issue raised, the Defendants contend that parol evidence of a mutual mistake was improperly admitted, in violation of the parol evidence rule, especially in view of the fact that the contract in question contained an integration clause which provides in part the following:

1.1.2  THE CONTRACT

The Contract Documents form the Contract for Construction. This Contract represents the entire and integrated agreement between the parties hereto and supersedes all prior negotiations, representations, or agreements, either written or oral.

In support of their argument, they cite *Maddox v. Webb Const. Co.*, 562 S.W.2d 198 (Tenn.1978); *Wilkerson v. Williams*, 667 S.W.2d 72 (Tenn.App.1983); *Farmers & Merchants Bank v. Petty*, 664 S.W.2d 77 (Tenn.App.1983); *Ward v. Berry & Associates, Inc.*, 614 S.W.2d 372 (Tenn.App.1981); *Talerent Leasing Corp. v. Pacific Eastern Co.*, 594 S.W.2d 714 (Tenn.App.1979); *Cummings & Co. v. Mascari*, 55 Tenn.App. 512, 402 S.W.2d 719 (1965).

We do not believe any of these cases are controlling because none involve a suit for reformation.

The one case cited which is a suit for reformation, *Marron v. Scarbrough*, 44 Tenn.App. 414, 450, 314 S.W.2d 165, 181 (1958), states the following:

Aside from the question of whether or not the evidence quoted above and other evidence offered in this cause was clear, cogent and convincing, which, in our opinion, it was not, we think that all testimony with reference to any alleged oral agreement between the parties prior to or contemporaneous with the execution of the written contract of sale on January 14, 1953, was incompetent under the parol evidence rule and should have been excluded by the Chancellor.

---

1. The Chancellor found, and Rentenbach does not contest, that Mr. Finley was without authority to sign the letter on behalf of Mr. Urman.

There are however, numerous Tennessee cases holding to the contrary. *State ex rel. v. Abernathy*, 159 Tenn. 175, 17 S.W.2d 17 (1929); *Alexander A. Talley v. William Courtney*, 48 Tenn. 715 (1870); *Barnes v. Gregory*, 38 Tenn. 230 (1858); *Boucher v. Bank of Adamsville*, 484 S.W.2d 361 (Tenn.App.1971); *City of Lawrenceburg v. Maryland Casualty Co.*, 16 Tenn.App. 238, 64 S.W.2d 69 (1933); *Graham v. Guinn*, 43 S.W. 749 (Tenn.Ch.App.1897); *Mayberry v. Nichol*, 39 S.W. 881 (Tenn.Ch.App.1896). It also appears that this rule is practically universal, as shown by the appendix listing cases from other jurisdictions.

■ The Defendants also argue, not without some merit, that the parol evidence rule will be emasculated if it can be circumvented by merely praying for reformation. A safeguard, however, has been enunciated which requires a higher degree of proof than mere preponderance of the evidence. The standard has been described in the case in various ways—clear and conclusive, *Davidson v. Greer*, 35 Tenn. (3 Sneed) 384 (1855); clear, certain and satisfactory, *Bailey v. Bailey*, 27 Tenn. (8 Humph) 230 (1847); clear, convincing and satisfactory, *Jones v. Jones*, 150 Tenn. 554, 266 S.W. 110 (1925); clear, cogent and convincing, *Whitaker v. Moore*, 14 Tenn.App. 204 (1938); full, clear and unequivocal, *Perry v. Pearson*, 20 Tenn. (1 Humph) 431 (1839); clear, exact and satisfactory, *Rogers v. Smith*, 48 S.W. 700 (Tenn.Ch.App.1898).

■ This brings us to the more difficult question to be resolved, viz., does the proof meet the more stringent test? The Trial Court did not expressly so find, but we think it is clear from the following statement in his memorandum opinion that he discredited the testimony of Mr. Urman and accredited that of Mr. Talentino:

Without reiterating all the facts which the Court has already found, the Court must conclude, based upon all the proof in this case, considering the credibility and interest of the witnesses, that a mutual mistake relative to the deletion of the contingency fund was in fact made.

Moreover, minutes were introduced of a meeting of the interested parties, including Mr. Urman, on May 24, 1981, wherein the following was recited:

2. MECHANICAL

The following changes were approved to be initialed in C.O. # 1:

a) Delete the 5% contingency fund requirement from contractor's contract

No change [2]

We accordingly conclude, in light of the foregoing and the Court's assessment of the testimony of Mr. Urman and the other witnesses, that the Plaintiff has produced the requisite degree of proof to entitle it to relief.

As to the Defendants' insistence that Rentenbach was not without fault, a prerequisite they insist is necessary for reformation, we think the case of *Alston v. Porter*, 31 Tenn.App. 628, 219 S.W.2d 745 (1949), is instructive. In that case this Court quoted from a Supreme Court opinion as follows (31 Tenn.App. at 632; 219 S.W.2d at 746):

The Supreme Court in the old case of *Hicks v. Gooch*, 3 Shan. Cases, 447, on page 451, said:

"It is stated to be the well-defined and well-established rule upon this subject, that when the mistake is of so fundamental a character that the minds of the parties have never, in fact, met; or where an unconscionable advantage has been gained by mistake or misapprehension, and there was no gross negligence on the part of plaintiff, either in falling into the error, or in not sooner claiming redress, and no intervening rights have accrued, and the parties may still be placed in status quo, equity will interpose in its discretion to prevent intolerable injustice."

■ We believe under the facts in the present case, Rentenbach was not guilty of gross negligence which would bar its recovery. In this regard, it would appear that if mere negligence precludes relief, very few

---

**2.** This refers to change in the contract price.

if any instruments could be reformed on the ground of mutual mistake, because if a party uses due care in reading an instrument he would never sign one which did not contain the parties' agreement.

■ The final issue contends that the Court improperly allowed compounding of interest on the amount retained rather than the actual interest earned on the retainage.

In this connection it appears that Mr. Urman placed the retainage in an account with other funds and withdrew the interest as it accrued.

The contract provides as to interest the following:

Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate entered below, or in the absence thereof, at the legal rate prevailing at the place of the Project.

(Here insert any rate of interest agreed upon.)

This contract provision must be read in light of T.C.A. 66–11–144, which provides the following:

*66–11–144. Portion of contract price held in escrow.*—(a) Whenever, in any contract for the improvement of real property a certain amount or percentage of the contract price is held back by the owner or contractor, that retained amount shall be deposited in a separate escrow account with a third party giving proper security for the performance of their obligation.

(b) As of the time of the deposit of the retained funds, they shall become the sole and separate property of the contractor, subcontractor, materialman, or laborer to whom they are owed.

(c) Upon satisfactory completion of the contract, to be evidenced by a written release by the owner or contractor, all funds accumulated in the escrow account together with any interest thereon shall be paid immediately to the contractor, subcontractor, materialman or laborer to whom it is owed.

(d) In the event the owner or contractor fails or refuses to execute the release provided for in subsection (c), then the contractor, subcontractor, materialman, or laborer, shall seek his remedy in a court of proper jurisdiction and the person holding said fund as escrow agent shall bear no liability for the nonpayment thereof to the contractor, subcontractor, materialman, or laborer.

We agree with the Chancellor that the interest should be compounded. We reach this conclusion because under the statute Mr. Urman had a duty to put the interest in a separate account. Had this occurred, interest would have been compounded and the Plaintiff entitled to receive it. In view of the fact that Mr. Urman violated the statute, we think the Chancellor's decision was appropriate.

For the foregoing reasons the Trial Court is affirmed and the cause remanded for collection of the judgment and costs below. Costs of appeal are adjudged against the Defendants and their surety.

PARROTT, P.J., and FRANKS, J., concur.

### APPENDIX

*Spiller v. Slayton*, 253 Ala. 687, 47 So.2d 188 (1950)

*Gablick v. Wolfe*, 469 P.2d 391 (Alaska 1970)

*Longshaw v. Corbitt*, 4 Ariz.App. 408, 420 P.2d 980 (1966)

*Wood v. Wood*, 207 Ark. 518, 181 S.W.2d 481 (1944)

*French v. Brinkman*, 60 Cal.2d 547, 35 Cal.Rptr. 289, 387 P.2d 1 (1963)

*Osborn v. Phelps*, 19 Conn. 63 (1848)

*Rucks v. Ansin*, 198 So.2d 662 (Fla.Dist.Ct. App.1967)

*Head v. Stephens*, 215 Ga. 184, 109 S.E.2d 772 (1959)

*Bilbao v. Krettinger*, 91 Idaho 69, 415 P.2d 712 (1966)

*Koch v. Streuter,* 218 Ill. 546, 75 N.E. 1049 (1905)

*Cripe v. Coates,* 124 Ind.App. 246, 116 N.E.2d 642 (1954)

*Hausbrandt v. Hofler,* 117 Iowa 103, 90 N.W. 494 (1902)

*Higgins v. Linn County Bank,* 127 Kan. 772, 275 P. 143 (1929)

*Agurs v. Holt,* 232 La. 1026, 95 So.2d 644 (1957)

*Coggins & Owens v. Carey,* 106 Md. 294, 66 A. 673 (1907)

*Goldberg v. Cities Service Oil Co.,* 275 Mich. 199, 266 N.W. 321 (1936)

*Smalley v. Rogers,* 232 Miss. 705, 100 So.2d 118 (1958)

*State v. Schwabe,* 335 S.W.2d 15 (Mo.1960)

*Fadden v. Sun Insurance Office,* 124 Neb. 712, 248 N.W. 62 (1933)

*Harker v. McKissock,* 12 N.J. 310, 96 A.2d 660 (1953)

*Brandwein v. Provident Mutual Life Ins. Co. of Philadelphia,* 3 N.Y.2d 491, 168 N.Y.S.2d 964, 146 N.E.2d 693 (1957)

*Archer v. McClure,* 166 N.C. 140, 81 S.E. 1081 (1914)

*Ives v. Hanson,* 66 N.W.2d 802 (N.D.1954)

*De Wees v. Spiliotis,* 94 Ohio App. 394, 115 N.E.2d 703 (1953)

*Prudential Fire Ins. Co. v. Stanley,* 191 Okl. 506, 131 P.2d 88 (1942)

*Bugen v. New York Life Insurance Company,* 408 Pa. 472, 184 A.2d 499 (1962)

*Rattan v. Dicker,* 373 S.W.2d 306 (Tex. App.1963)

*Shearer v. Welch,* 126 Vt. 106, 223 A.2d 552 (1966)

*Nadreau v. Meyerotto,* 35 Wash.2d 740, 215 P.2d 681 (1950)

*Edmiston v. Wilson,* 146 W.Va. 511, 120 S.E.2d 491 (1961)

*Newmister v. Carmichael,* 29 Wis.2d 573, 139 N.W.2d 572 (1966)

*Arndt v. Sheridan Cong. of Jehovah's Witnesses, Inc.,* 429 P.2d 326 (Wyo. 1967)