# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 2, 2001 Session

## K.S.O.H., ET AL. v. J.W.B., JR.
## In re: Adoption of a Male Child, T.J.B.

### Appeal from the Juvenile Court for Knox County
### No. K-2692    Carey E. Garrett, Judge

### FILED OCTOBER 4, 2001

### No. E2001-00055-COA-R3-CV

The mother ("Mother") and stepfather ("Stepfather") of a minor child ("Child") filed a Petition to Terminate the parental rights of the Child's biological father ("Father"). The Petition to Terminate alleged one ground for termination of Father's parental rights, abandonment. After three hearings, the Juvenile Court held that the Petition to Terminate should be dismissed because Mother and Stepfather failed to establish by clear and convincing evidence that Father had abandoned the Child and because termination of Father's parental rights would not be in the Child's best interests. Mother and Stepfather appeal. We affirm.

### Tenn. R. Civ. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed;
### Case Remanded.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

N. David Roberts, Jr., Knoxville, Tennessee, and Brenda Lea Lindsay-McDaniel, Knoxville, Tennessee, for the Appellants, K.S.O.H. and W.H., Jr.

Joseph F. Della-Rodolfa, Knoxville, Tennessee, for the Appellee, J.W.B., Jr.

# OPINION

## Background

Mother, K.S.O.H., and Stepfather, W.H., Jr., ("Petitioners") of a minor child, T.J.B., filed a Petition to Terminate the parental rights of the biological father, J.W.B., Jr., so that Stepfather could adopt the Child. Mother and Father began dating while in high school. Mother gave birth to the Child in early 1995. Although paternity was never established in a judicial proceeding, Father does not dispute paternity of the Child.

Mother and Father never married, and they disagree whether they resided together after the Child's birth. While they were still dating, Father frequently would visit the Child and provide some financial support. Mother's and Father's relationship ended in approximately September 1996. The record shows that Father continued visitation with the Child until Mother stopped the visitation in September or October 1997. Mother testified that she stopped the visitation due to concerns about the Child's safety with Father. At this time, Mother told Father that he could not visit the Child without a court order.

The proof in the record shows that prior to Mother's halting Father's visitation, Father had allowed the Child, then two years old, to shoot a gun and had returned the Child after a brief visitation period with a cigarette burn on his arm. The proof in the record shows that the cigarette burn was an accident. Father also had been involved in a motor vehicle accident while the Child was with him in his vehicle. On another occasion, Father had attempted to pick up the Child without a child safety seat. Moreover, it is undisputed that Father, after picking up the Child for a weekend visit, called Mother and threatened not to return the Child. Father did return the Child after Mother and Father discussed the issue. Additionally, Mother testified there were numerous times Father was supposed to pick up the Child but failed to do so which upset the Child.

No court order regarding Father's visitation schedule and child support obligation existed prior to Mother's Petition to Terminate being filed. Previously, Father's payment of child support, from the record, appears to have been sporadic. Father contended he provided child support prior to September or October 1997, in the form of cash or supplies, until Mother began refusing his financial assistance when she discontinued visitation. The parties dispute whether Father offered any child support after Mother stopped Father's visitation. Father testified he did not seek relief with the Juvenile Court once Mother discontinued his visitation because he could not afford an attorney. Father testified he was able to retain an attorney once served with the Petition to Terminate because he saved the money that Mother had refused for the Child's support and received a worker's compensation settlement.

Mother and Stepfather began living together in June 1997, and were married in December 1997. Petitioners have one child from their marriage. Despite her earlier difficulties, Mother graduated high school, obtained a bachelor's degree, and was working on her master's degree at the time of the hearing. Father married the Child's stepmother in September 1998, and they have

two children.  Father's employment history is sketchy.[1]  He was employed on at least a part-time basis at the time of the hearing.  The Trial Court did find that Father was regularly employed.

Mother and Stepfather filed the Petition to Terminate in February 1999.  Mother and Stepfather alleged in the Petition that at that time of the filing of the Petition, Father had not sought visitation with the Child for seventeen months and had not paid any child support for thirty months.  Father filed a response to the Petition and a motion requesting an order setting visitation and child support *pendente lite.*

The Juvenile Court held three hearings regarding the Petition to Terminate.  At the time of the hearings, Mother was approximately twenty-two years old and Father was twenty six years old.  The Juvenile Court's Finding of Fact and Opinion was entered in March 2000, and incorporated by reference in the Juvenile Court's Order.  In his Opinion, the Juvenile Court Judge's findings of fact included:

    (1)    After the Child was born in February 1995, Father saw him almost everyday until September 1996, when Mother and Father ceased their dating relationship.  Father continued to visit the Child overnight and on the weekends, having up to twenty overnight visits, until the Child was nearly two years old;

    (2)    Mother discontinued Father's visitation and contact with the Child in the fall of 1997 after she began to live with her current husband, Stepfather, and when and Mother and Stepfather decided that Stepfather wanted to adopt the Child;

    (3)    Although Mother testified that she wanted a court order setting visitation, Mother did not seek such relief and instead, filed the Petition to Terminate the parental rights of Father;

    (4)    Mother's grandmother, with whom Mother had lived both before and after the birth of the Child, testified that the Child had a good relationship with Father and that she had no concerns about the Father's visitation with the Child.  Mother's grandmother, however, testified that Father, in 1997, kept the Child for two days and

---

[1] Father's and stepmother's testimony regarding Father's income and work schedule was scant, at best.  It appears from the record that Father works part-time.  Father also testified that he did not file federal income tax returns for a number of years and worked for cash "under the table."

threatened to keep him in his custody but returned the Child after talking with Mother;

(5)     Mother's mother testified that Father provided for the Child by purchasing diapers and that after Father's visitation was discontinued, Father attempted to make calls to arrange for visitation but no effort was made to accommodate Father's requests;

(6)     Father requested visitation and offered financial assistance for the Child to Mother more than Mother and Stepfather had admitted, but Father exaggerated the number of times he has offered child support;

(7)     Mother admits that Father and the Child bonded, and while Mother is concerned about the trauma to the Child that may occur if Father is allowed visitation, the Juvenile Court believes that Mother "caused [the Child] to suffer trauma when she terminated his relationship with [Father]."

(8)     Although when younger, both Mother and Father had a "rather rough unstable and unhealthy lifestyle . . .[,]" they have both "settled down and both are apparently making good parents to their children"; and

(9)     Father is regularly employed and has a rather large, extended family.

The Juvenile Court denied the Petition to Terminate, holding that Father had not abandoned the Child and that it would not be in the best interests of the Child to terminate Father's parental rights. The Juvenile Court also held that custody was to remain with Mother and that Father would have reasonable visitation rights to be determined at a later hearing. Child support and a child support arrearage also were awarded.

The Juvenile Court's Finding of Fact and Opinion was entered on March 13, 2000, and was incorporated by reference into the Juvenile Court's Order entered on May 18, 2000. This Order reserved the visitation issue for a further hearing. Mother and Stepfather filed their Notice of Appeal, however, in April 2000, before the Order was entered and before the visitation issue was resolved. Mother and Stepfather also filed a second Petition to Terminate in February 2000, before

-4-

the Juvenile Court's Finding of Fact and Opinion was entered.[2] The Juvenile Court entered a second Order in September 2000, resolving all remaining issues, including visitation, and dismissing Mother's and Stepfather's second Petition to Terminate. Although Petitioners' Notice of Appeal was filed prematurely, under these circumstances, we will treat it as timely filed. *See* Tenn. R. Civ. P. 54; Tenn. R. App. P. 4(d). Due to the date of filing of Petitioner's Notice of Appeal, it further appears that only the dismissal of the first Petition to Terminate is at issue.

### Discussion

On appeal and although not exactly stated as such, Mother and Stepfather contend the Juvenile Court erred in dismissing their Petition to Terminate because they established, by clear and convincing proof, that Father had abandoned the Child since Father: (1) willfully failed to visit the Child as shown by Father's failure to seek visitation until after the Petition to Terminate was filed, eighteen months after his last visit; and (2) willfully failed to provide support for the Child. Moreover, Mother and Stepfather contend that the Juvenile Court erred in determining that termination of Father's parental rights would not be in the Child's best interests.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Alexander v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998). A Trial Court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997).

We first address Petitioners' issue regarding the Juvenile Court's determination that Father's parental rights should not be terminated. It is well-established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)).

Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Before a parent's rights can be terminated, there must be a showing that the parent is unfit or that substantial harm to the child will result if parental rights are not terminated. *In re Swanson,* 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.,* 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

---

[2] The second Petition to Terminate essentially made the same allegations as the first but added the allegation that Father had not paid child support since being served with the first Petition to Terminate in February 1999.

Before the court may inquire as to whether termination of parental rights is in the best interest of the child, the court first must determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)(1). This Court discussed the "clear and convincing evidence" standard in *O'Daniel v. Messier,* 905 S.W.2d 182 (Tenn. Ct. App. 1995), as follows:

> The "clear and convincing evidence" standard defies precise definition. *Majors v. Smith,* 776 S.W.2d 538, 540 (Tenn. Ct. App. 1989). While it is more exacting than the preponderance of the evidence standard, *Santosky v. Kramer,* 455 U.S. at 766, 102 S. Ct. at 1401; *Rentenbach Eng'g Co. v. General Realty Ltd.,* 707 S.W.2d 524, 527 (Tenn. Ct. App. 1985), it does not require such certainty as the beyond a reasonable doubt standard. *Brandon v. Wright,* 838 S.W.2d 532, 536 (Tenn. Ct. App. 1992); *State v. Groves,* 735 S.W.2d 843, 846 (Tenn. Crim. App. 1987).
>
> Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. *See Hodges v. S. C. Toof & Co.,* 833 S.W.2d 896, 901 n. 3 (Tenn. 1992). It should produce in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established. *In re Estate of Armstrong*, 859 S.W.2d 323, 328 (Tenn. Ct. App. 1993); *Brandon v. Wright,* 838 S.W.2d at 536; *Wiltcher v. Bradley,* 708 S.W.2d 407, 411 (Tenn. Ct. App. 1985).

*O'Daniel v. Messier,* 905 S.W.2d at 188.

Although initiation of termination of parental or guardianship rights may be based upon any of the statutory grounds outlined in Tenn. Code Ann. § 36-1-113(g), Petitioners sought to terminate Father's parental rights using only one of the statutory grounds:

> (1)  Abandonment by the parent or guardian, as defined in [prior law], has occurred;[3]

Tenn. Code Ann. § 36-1-113(g)(1). In the current form of the statute, the term "abandonment" has four statutory definitions found at Tenn. Code Ann. §§ 36-1-102(1)(A)(i) - (A)(iv). In this matter, the Petition to Terminate alleged that Mother and Stepfather were seeking to terminate Father's parental rights under only one of the definitions of abandonment as follows:

---

[3] As discussed in more detail *infra*, the statutory definition of "abandonment" referenced in this statute has been declared unconstitutional. Hence, we have substituted "prior law" to reference the prior law which is to be applied until the statute is amended by the legislature.

(i)     For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child . . . .

Tenn. Code Ann. § 36-1-102(1)(A)(i).  The "willful failure to visit" and "willful failure to support" definitions are found, under the current form of the statute, at Tenn. Code Ann. §§ 36-1-102(1)(D) – (1)(E).

Our Supreme Court in *In re Swanson*, 2 S.W.3d 180 (Tenn. 1999), held that the "willful failure to support" definition of abandonment found at Tenn. Code Ann. § 36-1-102(1)(D), was unconstitutional because it created an "irrebuttable presumption that the failure to provide monetary support for the four months preceding the petition to terminate parental rights constitutes abandonment, irrespective of whether that failure was intentional . . . ."  *Id.* at 188.  The Court further held that "until otherwise amended by our legislature, the definition that was in effect under prior law shall be applied."  *Id.* at 189; *see also id.* n. 14 (stating that "[w]e wish to make it clear that the definition previously in effect was the definition as it existed in 1994.  Under the prior statute, the definition of 'abandoned child' contained an element of intent both in failures to visit and failures to support").

Thereafter, this Court, citing *In re Swanson*, used the prior statutory law from 1994 for the definition of the term "abandonment."  *In re Adoption of Copeland*, 43 S.W.3d 483, 488 (Tenn. Ct. App. 2000).  This Court held:

Under the law as it existed prior to *In re Swanson*, an "abandoned child" was defined as

[a] child whose parents have willfully failed to visit or have willfully failed to support or make reasonable payments toward such child's support for four (4) consecutive months immediately preceding the institution of an action or proceeding to declare the child to be an abandoned child.

T.C.A § 36-1-102(1)(A)(i) (Supp. 1994).  "Willfully failed to visit" is defined as "the willful failure, over four (4) consecutive months, to visit or to engage in more than token visitation."  T.C.A. § 36-1-102(1)(B)(ii) (Supp. 1994).  There is no separate definition of "willfully failed to support or make reasonable payments toward such child's support".  Thus, under the 1994 law, which is to be applied in

-7-

light of the Supreme Court's decision in *In re Swanson*, both the failure-to-visit and the failure-to-support definitions contain an element of intent.

*Id.* (alterations in original).

The Juvenile Court held that Mother and Stepfather failed to establish by clear and convincing evidence that Father had abandoned the Child. In neither its Finding of Fact and Opinion nor its Order did the Juvenile Court state whether it was applying the current statutory definition of "abandonment", which has been found to be unconstitutional, or "prior law." *See id.*; *In re Swanson*, 2 S.W.3d at 188. Petitioners do not argue on appeal that the Juvenile Court applied the unconstitutional definition of "abandonment" in making its determination. Application of the unconstitutional definition of "abandonment" would have benefitted Petitioners, and almost certainly would have resulted in a finding that Father had abandoned the Child. We hold that both the *In re Swanson* and *In re Adoption of Copeland* decisions apply to this matter.

We also acknowledge that in making its factual findings and concluding that the Petition to Terminate should not be granted, the Juvenile Court had heard the testimony of the parties and their witnesses and had assessed their credibility. "Unlike this Court, the [Juvenile Court], observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). The Trial Court's determinations regarding credibility are accorded deference by this Court. *Id.*; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). "'[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary.'" *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

Applying the prior statutory definition of the term "abandonment" found in the 1994 version of the statute, we hold that the Juvenile Court did not err in determining that Father had not abandoned the Child for failure to visit or failure to support the Child. With respect to the allegation that Father failed to visit the Child, the evidence in the record before us does not preponderate against the Juvenile Court's findings that the Child and Father had bonded during their visits together and that no effort was made to accommodate Father's requests for visits after Mother discontinued his visitation. *See* Tenn. R. App. P. 13(d); *Alexander v. Inman*, 974 S.W.2d at 692. The proof in the record shows that prior to Mother's discontinuance of Father's visitation in September or October 1997, Father visited the Child on a fairly regular basis. Thereafter, Father attempted to visit the Child, but Mother thwarted his efforts. Under the facts and circumstances presented by the record on appeal and given the deference we must provide the Juvenile Court's determinations of credibility, we hold that although Father did not visit the child for four consecutive months prior to the filing of the Petition to Terminate in 1999, Petitioners failed to prove by clear and convincing evidence that Father's failure to visit the Child was intentional. *See Hickman v. Hickman*, No. E2000-00927-COA-R3-CV, 2000 WL 1449853, at * 1 (Tenn. Ct. App. Sept. 28, 2000), *no appl. perm. app. filed* (holding that mother did not intentionally fail to visit her children where both father and stepmother admitted that they had interfered with mother's visitation). Accordingly, we affirm

-8-

the Juvenile Court's determination that the Petition to Terminate should not be granted on this ground.

We next review Petitioners' argument that the Juvenile Court erred in determining they failed to prove by clear and convincing evidence that Father abandoned the Child by failing to support him. Petitioners correctly argue on appeal that the Juvenile Court did not make a specific determination that Father's failure to support was not willful. As discussed, to succeed on this ground, however, Petitioners had the burden to prove by clear and convincing evidence that Father "'willfully failed to support or make reasonable payments toward such child's support for four (4) consecutive months'" prior to the filing of the Petition to Terminate. *In re Adoption of Copeland*, 43 S.W.3d at 488 (quoting Tenn. Code Ann. § 36-1-102(1)(A)(i) (Supp. 1994)).

We hold that the Juvenile Court did not err in holding that the Petition to Terminate should not be granted on the ground of Father's alleged willful failure to support the Child. Petitioners correctly note that the Juvenile Court failed to determine specifically that Father's failure to pay support was not intentional. The Juvenile Court did determine, however, that the Petition to Terminate was not well-taken, and it follows that the Juvenile Court found that Petitioners failed to establish by clear and convincing evidence this ground for termination of Father's parental rights. The Juvenile Court did make a factual finding that although Father's testimony was somewhat exaggerated, Father offered money more than Petitioners would admit. The proof contained in the record on appeal does not preponderate against this finding. *See* Tenn. R. App. P. 13(d); *Alexander v. Inman*, 974 S.W.2d at 692. The testimony shows that Father did provide Mother with cash and supplies, although infrequently, prior to the time she discontinued Father's visitation. The parties dispute whether Father offered financial assistance to Mother after she discontinued his visitation. It is clear, however, from the Juvenile Court's dismissal of the Petition to Terminate that it found Father to be more credible on this issue. Petitioners, not Father, had the burden on this issue. Based on the proof contained in the record and the Juvenile Court's assessment of the credibility of the witnesses and parties, we affirm the Juvenile Court's determination that Petitioners failed to prove by clear and convincing evidence this ground for termination of Father's parental rights.

We acknowledge that Father's relationship with the Child, when he was allowed by Mother to visit the Child, was not perfect and that Mother became frustrated with Father's behavior over time. These circumstances, as presented by the proof in the record, do not justify under the statute the termination of Father's parental rights. Due to Father's "fundamental right to the care, custody, and control of [the Child,]" Petitioners must prove circumstances justifying the termination of Father's rights by clear and convincing evidence, a heightened standard. *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)). The proof in the record before us does not show that Petitioners established grounds for termination of Father's parental rights by clear and convincing evidence. Accordingly, we affirm the Juvenile Court's dismissal of the Petition to Terminate.

Having held that the alleged ground for termination of Father's parental rights, abandonment, was not proven by clear and convincing evidence, the remaining issue on appeal,

whether the Juvenile Court erred in holding that termination of Father's parental rights would not be in the best interests of the Child, is pretermitted. *See* Tenn. Code Ann. § 36-1-113(c); *In re Swanson*, 2 S.W.3d at 188; *In re M.W.A.*, 90 S.W.2d at 622.

## Conclusion

The judgment of the Juvenile Court is affirmed and this cause is remanded to the Juvenile Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellants, K.S.O.H., and W.H., Jr., and their surety.

_____
D. MICHAEL SWINEY, JUDGE