IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 8, 2004

IN RE: A.T.S.

**Appeal from the Chancery Court for Dickson County**
**No. 7984-02     Robert E. Burch, Judge**

**No. M2004-01904-COA-R3-PT - Filed January 28, 2005**

Paternal grandparents, the legal guardians of their granddaughter, filed a petition to terminate the mother's parental rights and to adopt their granddaughter. The child's father joined in the petition. The trial court found that the mother had abandoned the child by her willful failure to provide financial support; however, the trial court denied the grandparents' petition based on its finding that termination of the mother's parental rights was not in the best interest of the child. Grandparents appealed. We affirm.

**Tenn. R. App. P. 3; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., joined. WILLIAM B. CAIN, J., filed a concurring opinion.

Joseph Hornick, Dickson, Tennessee, for the appellants, J.L.S., L.A.S. and C.D.S.

Timothy V. Potter, Dickson, Tennessee, for the appellee, C.R.C.

**OPINION**

This appeal arises from a "Petition for Adoption" filed by the paternal grandparents (Petitioners) who sought to terminate the parental rights of the child's mother and to adopt their granddaughter, A.T.S. (the child).[1] The child's father, Petitioners' son and Mother's ex-husband, joined in the petition for the purpose of giving consent to the adoption pursuant to Tenn. Code Ann. § 36-1-117(f).

The child, who was born in August 1998, had lived with Petitioners since October 1999. With the consent of Mother and Father, Petitioners were appointed legal guardians of the child by the Juvenile Court on March 1, 2000. Since then, Mother has had scheduled, unsupervised visits

---

[1]This is Appellants' second Petition for Adoption. The first one was denied per order dated March 22, 2002. Shortly thereafter, Mother filed a Petition for Permanent Custody. This Petition for Adoption followed.

with the child. During most of this period the visits have been scheduled for Saturdays from 8:00 a.m. until 6:30 p.m., though there is no visitation or support order in effect.

The child was four years old when Petitioners filed this action. Petitioners asserted that Mother had abandoned the child due to her willful failure to visit or support her child during the four-month period immediately preceding the filing of a petition to terminate the parental rights. They also asserted that terminating Mother's parental rights was in the child's best interest because doing so would make the child available for adoption by Petitioners.

At trial, Petitioners presented evidence that they made arrangements for Mother to have weekly visits with the child, however, she often missed those visits. The Petitioners maintained a journal in which they recorded the frequency, or infrequency, of Mother's visits. It revealed that in the eighteen weeks prior to filing their petition for adoption, Mother missed five visits and was often late for her scheduled visits.[2] Petitioners also presented evidence that despite their requests that she do so when able, Mother has made very few financial contributions toward the child's support and when she did, that support was merely token. Aside from buying things for the child when she was with Mother, Mother scarcely provided any financial assistance. Furthermore, Petitioners claimed that she had poor parenting skills and on occasion demonstrated a lack of interest in her child. The grandmother testified that Mother never asked how the child was doing in school, never asked to see her grades and never attended school functions. They identified activities by Mother they claimed were harmful to the child such as smoking around the child,[3] not requiring the child to use the proper restraints when riding in motor vehicles, and allowing the child to ride four wheelers and motorcycles.

The trial court found that Mother had abandoned the child based on Mother's willful failure to provide financial support for the four-month period prior to the filing of the petition.[4] However, the trial court denied the petition for termination of parental rights on the finding that termination of Mother's parental rights was not in the child's best interest. The trial court held:

> [T]o terminate a parent's parental rights in the State of Tennessee, the Court must also find that the termination of the parent's rights is in the best interest of the minor child in accordance with T.C.A. § 36-1-113. The Court cannot find by clear and convincing evidence that it is in the best interest of the minor child . . . that the parental rights of her mother . . . should be terminated. The Court finds that there is

---

[2] Petitioners' records showed that Mother missed five visits, including a visit missed due to a death in Mother's family.

[3] The child has sinus problems which are aggravated by cigarette smoke. Petitioners testified that the child often returns from visits with Mother smelling like "an old ashtray." On one occasion, Petitioners testified that the child returned from a visit with Mother smelling like marijuana.

[4] The Petition for Adoption was filed September 3, 2002, thus the relevant four-month period was May 2002 until September 2002.

a relationship between the child and . . . [Mother], and it would be detrimental to the child for this relationship to be terminated. The Court has been presented with no proof that this relationship will be allowed to continue if the parental rights of [Mother] are terminated.

Additionally, the trial judge determined that Mother's visits were more than "token" and stated, "I see that there is a relationship between them [Mother and the child] and that I feel would be injurious to the child for that to be terminated. We don't – if her parental rights are terminated, we have no guarantee than (sic) any relationship would continue."

Only the Petitioners filed an appeal, and the only issue raised by Petitioners is a challenge of the trial court's determination that terminating Mother's parental rights is not in the child's best interest. The trial court also found that Mother had abandoned the child by willfully failing to provide financial support; however, Mother did not appeal that finding. Therefore, the sole issue on appeal is whether there is or is not clear and convincing evidence in the record that terminating Mother's parental rights is in the child's best interest.

Parents have a fundamental right to the care, custody and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993). This right is superior to the claims of other persons and the government, yet it is not absolute. A court may terminate a parent's parental rights if it finds by clear and convincing evidence that one of the statutory grounds for termination of parental rights has been established and that the termination of such rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re A.W.*, 114 S.W.3d 541, 544 (Tenn. Ct. App. 2003); *In re C.W.W.*, 37 S.W.3d 467, 475-76 (Tenn. Ct. App. 2000).

The clear and convincing evidence standard is a heightened burden of proof which serves to minimize the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying this high standard produces a firm belief or conviction regarding the truth of facts sought to be established. *In re C.W.W.*, 37 S.W.3d at 474. It has been explained by this court as follows:

> The "clear and convincing evidence" standard defies precise definition. *Majors v. Smith*, 776 S.W.2d 538, 540 (Tenn. Ct. App. 1989). While it is more exacting than the preponderance of the evidence standard, *Santosky v. Kramer*, 455 U.S. at 766, 102 S. Ct. at 1401; *Rentenbach Eng'g Co. v. General Realty Ltd.*, 707 S.W.2d 524, 527 (Tenn. Ct. App. 1985), it does not require such certainty as the beyond a reasonable doubt standard. *Brandon v. Wright*, 838 S.W.2d 532, 536 (Tenn. Ct. App. 1992); *State v. Groves*, 735 S.W.2d 843, 846 (Tenn. Crim. App.1987).

> Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. *See*

> *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 3 (Tenn. 1992). It should produce in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established. *In re Estate of Armstrong*, 859 S.W.2d 323, 328 (Tenn. Ct. App. 1993); *Brandon v. Wright*, 838 S.W.2d at 536; *Wiltcher v. Bradley*, 708 S.W.2d 407, 411 (Tenn. Ct. App. 1985).

*O'Daniel v. Messier,* 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995). It is under this heightened standard of review that we must review the trial court's findings, in accordance with Tenn. R. App. 13(d) which directs that appellate review of non-jury cases is *de novo* upon the record, accompanied by a presumption of correctness, unless the evidence preponderates against the trial court's factual findings.

In an effort to balance the important, fundamental rights of a parent and the best interest of a child, our legislature has provided that parental rights may only be terminated for specific, well-defined grounds. *In re A.W.*, 114 S.W.3d at 544. The statutory grounds for termination of parental rights are set forth within Tenn. Code Ann. § 36-1-113(g). The existence of any one of the statutory grounds is sufficient to support a trial court's decision to terminate parental rights. *In re C.W.W.*, 37 S.W.3d at 473; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). One of those grounds is abandonment. Tenn. Code Ann. § 36-1-113(g). The trial court found that Mother had abandoned the child and Mother did not appeal that finding. Thus, the only issue is whether termination of Mother's parental rights is in the best interest of the child. When making this determination, the court shall consider, but is not limited to, the following statutory factors:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i).

The child's mother was only sixteen years old when the child was born. When this matter went to trial she was only twenty-one years old. She did not graduate from high school but has earned her GED. The evidence revealed that Mother is immature and irresponsible yet it revealed that she has a relatively good, though sporadic, relationship with the child. When asked whether she and the child have a good relationship, Mother replied:

A. I think we do. I think we have a very good relationship.
Q. Does she call you Mommy?
A. Yes.
Q. And do you love her very much?
A. Very much, more than –
Q. How often do you see her right now?
. . . .
A. Right now I see her on Saturdays from 8:00 until – I have to pick her up by 8 o'clock and I have to have her home by 6:30.
Q. Every Saturday?
A. Every Saturday.

Mother visited with the child thirteen of the eighteen weeks prior to Petitioners filing the petition.[5] During their visits, Mother and child spent time with family and friends, shopped, attended birthday parties, went swimming and fishing and generally enjoyed each other's company. The photographs of the child depict a happy and healthy little girl who appears to be enjoying visits with her mother. While Mother's visitation protocol was disappointing, the trial court found that Mother's visitation with the child "has not been merely token visitation."

The testimony of two non-party witnesses was particularly compelling. Karen Stewart, Mother's ex-mother-in-law from Mother's second marriage, testified that she had witnessed visits between Mother and the child. She stated that the child appeared to be a happy little girl who was close to Mother. When questioned if she believed it to be in the child's best interest to continue to see her mother, Ms. Stewart answered, "Yes." She also stated, "I think . . .[the child] loves her mother." Ms. Stewart further testified that she believed it was in the child's best interest to be able to continue to have a relationship with her mother. Another compelling witness was the child's maternal grandmother, Susan Beard. She summarized the situation as follows:

---

[5]One of the missed visits was due to a death in the family.

You spend five minutes with her and you'll know how close they are. . . it's just blowing my mind that someone would want to take her away from that. And . . .[the child] constantly, constantly is pleading with her not to take – I don't want to go back. I want to stay with you, Mommy.

When asked whether it would be in the child's best interest to not see Mother any more, Susan Beard answered, "No, to tear them apart would be the worst thing in the world."

It is most apparent from the record that Petitioners are the stabilizing force in the child's life. They provide the child with food, clothing, shelter, medical care and any other needs that the child's parents have failed to provide. Most importantly they provide the child with a loving and safe home, something every child should have. Though Petitioners have served lovingly and admirably as guardians for the child and would likely be excellent parents if the child was available for adoption, courts are not authorized to make this or any child available for adoption unless it is proven by clear and convincing evidence that it is in the best interest of the child to terminate the parental rights of the child's parents.[6] Though Mother is immature and irresponsible, it is apparent that a meaningful and beneficial relationship exists between Mother and the child, the termination of which would likely be detrimental to the child. Furthermore, we are of a like mind with the trial court's concern that there were no assurances that any relationship would be permitted after termination. This is a recognition of the effect of termination as a matter of law, because Mother would no longer have any legal rights to see her "former" child once her rights were terminated. Moreover, this is apparent from the facts in the record because the paternal grandmother, while admitting that Mother had a relationship with the child, stated that she did not believe it was a good idea for the child to continue seeing Mother.

Based on the foregoing, we find that the record fails to establish by clear and convincing evidence that terminating Mother's parental rights would be in the best interests of the child. Accordingly, we affirm the judgment of the trial court denying the petition. This matter is remanded to the trial court for proceedings consistent with this opinion and costs of appeal are assessed against Petitioners.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[6] Of course, one of the statutory grounds for termination must also be established by clear and convincing but that has already been established in this case.